Rockingham,
No. 6256.

### WENTWORTH HOTEL, INC.

*v.*

### TOWN OF NEW CASTLE.

January 31, 1972.

*Boynton, Waldron & Dill ( Mr. Wyman Boynton orally ) for the plaintiff.*

*Shaines, Madrigan & McEachern ( Mr. John R. Maher orally ) for the defendant.*

PER CURIAM. This is an appeal from the decision of the Zoning Board of Adjustment of the Town of New Castle which granted part and denied part of plaintiff's request for a variance to use its property, zoned partly residential and partly oceanside and beach, for the construction of multi-family condominiums, which are not permitted in either district. The entire property of about 50 acres is and has been a summer resort hotel complex operated as a nonconforming use. Plaintiff's premises which are surrounded on three sides by water comprise the westerly end of New Castle which is an island connected to the mainland by bridges. The property is divided by a road on the north side of which is the residential district and on the south side of which is the oceanside and beach district. Because of the lack of space, its 18-hole golf course is located in the adjoining town of Rye. In the oceanside and beach district only one single-family house may be built on each acre of land while in the residential district two-family residences on lots as small as 10,000 square feet are permitted.

Fire had destroyed a dormitory housing 200 employees of the hotel and continued operation of the hotel as it has

been operated requires its replacement at a cost of over half a million dollars. Additional sprinkler systems must be installed in the hotel to obtain and retain insurance. New sewerage plants are required and capital is needed for other improvements.

Because of changed vacation preferences of the American public, resort hotels like the Wentworth-by-the-Sea have experienced a substantial decline in the number of guests using the hotel for vacation purposes and are relying more on convention-type use. Competition is strong and the financial situation of the plaintiff is bleak.

To raise the substantial amount of capital it needs, the plaintiff seeks to resort to the sale of its available land. It contends, however, that the sale of its land for uses permitted under existing zoning restrictions could not raise capital in sufficient amounts. Wishing to make the best possible use of its facilities, plaintiff sought to obtain a variance to permit it, over a period of time, to build for sale a complex of condominiums whose owners would have access to the hotel swimming pool, tennis courts, golf course, and other facilities.

The ten-year plan of the plaintiff was to construct a total of two hundred eighty condominium units on both sides of the road, the largest of which was a 104-unit structure to be built during the last two of the ten years to replace the easterly wings of the main hotel building. A nine-hole golf course, a golf clubhouse, a clubhouse pool, marina, and other new facilities including adequate sewage treatment plants are contemplated as part of the overall plan. When completed and fully occupied, it is estimated that some 800 people would be living in these units which are expected to sell for from $40,000 to $70,000 each. A buffer zone of 40 feet would separate the plaintiff's property from adjoining owners.

It is contemplated that with a shift to a condominium-type operation, the hotel staff could be so reduced as to make unnecessary the rebuilding of the dormitories and the hotel could be reduced in size so as to eliminate the addition of new sprinkler systems.

The board of selectmen denied a permit and plaintiff appealed to the board of adjustment. After a hearing, the board of adjustment denied the variance. Upon rehearing

on application of the plaintiff, the board granted the variance as to the 104-unit structure to replace the easterly wings of the hotel but denied the application as to the balance of the plaintiff's property. In granting the variance as to part of the property, the board found that all five requirements for a variance had been met. *Gelinas* v. *Portsmouth,* 97 N.H. 248, 250, 85 A.2d 896, 898 (1952). As to all other land included in the petition, the board found that for condominium purposes, it "could cause" diminution of value of surrounding property, would "not be of benefit to the public interest", that a denial would "not result in unnecessary hardship", and that "the use requested would be contrary to the spirit of the Ordinance". It made no finding as to whether substantial justice would be done by granting the variance as to the remaining land.

The matter was heard by a Master, *Leonard C. Hardwick,* Esquire, on the full record of proceedings before the board without additional evidence, who found that the plaintiff had not met the burden of proving that the board's action was unjust, unreasonable or unlawful, and recommended that the petition be dismissed. The Court, *Perkins, J.,* entered a decree in accordance with the recommendation of the master and transferred plaintiff's exceptions.

Plaintiff contends first that, as a matter of law, the board could not find that the requirements of a variance had been met as to part of its premises and not met as to the balance. It contends that its entire property is one integrated commercial unit although it consists of many facilities. It argues that the board must treat its property as a unit and either grant or deny the variance requested for the entire property.

RSA 31:72 (IV) specifically authorizes boards of adjustment to reverse or affirm the order appealed from "wholly or *partly*". (Emphasis added). The board would be justified under the law, in dealing with property covering over fifty acres, to find that requirements for a variance existed as to part but not the rest. Although the plaintiff may operate its business as a unit, the board is dealing with a substantial part of the town which is being operated under a nonconforming use. The ordinance has dictated that, absent the present nonconforming use, the property should be restricted to those uses allowed in the district in which it lies.

It is a general policy of zoning to carefully limit the extension and enlargement of nonconforming uses. *Arsenault* v. *Keene,* 104 N.H. 356, 187 A.2d 60 (1962); *LaChapelle* v. *Goffstown,* 107 N.H. 485, 225 A.2d 624 (1967). To be sure, the plaintiff does not seek to extend or enlarge its commercial hotel use, but it does seek to alter as well as to enlarge the nonconforming use of its property. The board could well find that permitting plaintiff to replace part of its existing structure with a condominium type of buildings would not be substantially enlarging or extending the present use of its land and could reasonably find that all the conditions for a variance were met. As to the balance of petitioner's property, however, a different situation was presented. By and large, the balance of the land upon which plaintiff seeks to build condominiums is not being used except as grounds surrounding the hotel and other facilities. Therefore, although plaintiff was making a nonconforming commercial use of its property, that part with respect to which the variance was denied is not in the usual sense being so used. It is, in effect, vacant land. If the variance were to be granted as to that part, it would permit a substantially greater use than that to which it is presently being put or is permitted by the ordinance.

One obvious purpose of the ordinance in restricting the size of lots and number of families to dwellings within the two districts is to prevent the "overcrowding of land" and "to avoid undue concentration of population". RSA 31:62.

The use of the land in question for the condominiums proposed would make a more concentrated use of the land than single or two-family dwellings and would result in more of a concentration of population than would the uses permitted by the ordinance. Although the ownership may be different, condominium dwellings of the type contemplated are not unlike apartment dwellings so far as the actual use of the land is concerned. In view of the substantial concentration of population which is contemplated if the variance were to be granted for the entire property, the board was justified on this consideration alone in finding that it would not be in the public interest, not within the spirit of the ordinance, and not an unnecessary hardship on plaintiff if the application were denied as to part of the property. Any hardship

resulting from the denial of a variance for part of the property could be found to be necessary in order to carry out the purposes of the ordinance. Considering the entire record before us, we cannot say that the master was in error when he failed to find that the action of the board in denying a variance to part of plaintiff's property as it did, while granting it as to another part, was unjust, unreasonable or unlawful. *Vannah* v. *Bedford,* 111 N.H. 105, 276 A.2d 253 (1971).

Plaintiff contends that if the board can find a requested use acceptable as to part only of plaintiff's land, it must make specific findings to support the denial of the variance as to the remaining land. It recognizes that in the usual case where a variance is granted or denied as to the entire property, no specific findings are required by the law. *See Gelinas* v. *Portsmouth,* 97 N.H. 248, 85 A.2d 896 (1952). It argues, however, that since the different findings as to hardship, public interest, etc., seem inconsistent, specific findings are necessary to determine the basis for the different findings. We must reject this argument. The law does not place the burden upon the board to justify its action but rather expressly places the burden on the party seeking to set aside its decision. RSA 31:77. We have already referred to circumstances which in this case would allow the board to treat part of plaintiff's property differently than the balance.

Plaintiff further contends that the board as a matter of law was required to grant the variance for the entire property because it was for a residential use "within an area already classified as commercial hotel use under a nonconforming classification" and was therefore for a higher or more restrictive use. Plaintiff confuses the classification of his land under the ordinance with his being permitted to continue a preexisting nonconforming use within a more restrictive district. RSA 31:62. Its nonconforming use gives it no right to use its land for any purpose not permitted under the ordinance. *LaChapelle* v. *Goffstown,* 107 N.H. 485, 225 A.2d 624 (1967).

Although the condominiums were intended for residential use, it is not the kind of residential use permitted by the ordinance. Plaintiff argues that they are not requesting a use for apartments but a residential use not known at the time the ordinance was enacted and therefore not covered

by it. As already pointed out, the proposed condominiums differ from apartments only in the type of ownership and the ordinance is not concerned with the type of ownership but with the number of families per building, the size of lots, and the character of the use. We hold that the board was not compelled to grant plaintiff the variance requested.

Plaintiff finally contends that certain restrictions and limitations imposed by the board with respect to the variance granted are invalid.

While RSA 31:72 (IV) contains no express provision permitting conditions to be attached to a variance it gives the board of adjustment broad powers. We have held that these include the authority to attach reasonable conditions where they are necessary to observe the spirit of the ordinance. *Vlahos Realty Co.* v. *Little Boar's Head District,* 101 N.H. 460, 146 A.2d 257 (1958); 101 C.J.S. Zoning *s.* 310 (1958). These conditions, however, must relate to the use of the land and not to the person by whom such use is to be exercised. *Olevson* v. *Narragansett Zoning Bd.,* 71 R.I. 303, 44 A.2d 720 (1945); *State* v. *Konopka,* 119 Ohio App. 513, 200 N.E.2d 695 (1963); *Montgomery Co.* v. *Mossburg,* 228 Md. 555, 180 A.2d 851 (1961).

Condition C provides that the variance shall expire three years from October 1, 1970 unless construction of the condominium is completed. This appeal has rendered that time limitation obsolete. However, if the board should consider imposing a similar up-dated condition we deem it opportune to bring the following to its attention. If plaintiff under a permit issued under this variance has made substantial construction on the property or incurred substantial liabilities related directly thereto it would thus obtain a vested right to proceed with the construction and the time limit for completion would become inoperative and the permit could not be revoked. 101 C.J.S. Zoning *ss.* 243, 244 (1958); *see Piper* v. *Meredith,* 110 N.H. 291, 299, 266 A.2d 103, 109 (1970).

Condition D provides that a new application for a variance will be required if the Wentworth Hotel property or the lot in question is sold or transferred to others before construction authorized under the present variance is commenced. We are of the opinion that this condition is intended to insure that the construction authorized by the variance will be a

part of the existing Wentworth complex as proposed by the application. This is evidenced by certain findings and other conditions imposed by the board when granting the present variance. See paragraphs 1., A.4, B.1, and B.2, of the findings and orders of the board.

We hold that condition D is intended to insure that the authorized use will be in keeping with the existing neighborhood. It is directed at the use of the land and not at the person by whom such use is to be exercised. Where compatible with the purposes of zoning as it is in this case the condition is within the power of the board to impose. *LaChapelle* v. *Goffstown,* 107 N.H. 485, 489, 225 A.2d 624, 627 (1967).

We interpret condition F, requiring compliance with all ordinances and statutes and making all ordinances "subsequently adopted" applicable to plaintiff's property, as applying only to such ordinances and statutes as would not infringe upon plaintiff's vested rights. Thus interpreted it is valid.

Condition G requires that plaintiff "shall be responsible for all policing and all maintenance of buildings, grounds, sidewalks, roads, sewers, snow removal and garbage disposal" and save the town harmless for any expense resulting from its failure to comply with this requirement. We find nothing invalid in condition G which is restricted to the part of the plaintiff's property as to which the variance is granted and to activities conducted thereon.

*Remanded.*