Hillsborough,
No. 6250.

*Hamblett, Kerrigan, Latourette & Lopez* (*Mr. Joseph M. Kerrigan* orally) for the plaintiff.

*Barry L. Cerier,* city solicitor, by brief and orally, for the defendant.

DUNCAN, J.   This appeal to the superior court under RSA 31:77 is from denial by the Board of Adjustment of the City of Nashua of the plaintiff's request for a variance from the terms of the city's zoning ordinance, for the purpose of allowing the plaintiff's premises in Nashua to be used for a gasoline filling station. The premises in question are at the southeast corner of the intersection of Main and Allds streets in a two-family "B Residential" zone. The Superior Court (*Loughlin, J.*), after hearing and a view, granted the plaintiff's request for findings and rulings, set aside the decision of the board of adjustment, and ordered that a variance be granted. We are of the opinion that this was error, and that the court's order should be vacated.

The "B Residential" zone in which the plaintiff's property is situated is located south of a "General Business" zone along Main Street at the center of the city, and lies between the business zone and a substantial "A Residential" zone to the south. Directly across Main Street from the plaintiff's property is a relatively small "C Residential" zone. Allds Street proceeds easterly from Main Street and gives access to East Hollis Street and the easterly side of the city. To the west of Main Street Allds Street is abbreviated and dead-end.

The immediate neighborhood within the "B Residential" zone is a mixture of residential and business uses. On the east side of Main Street to the north of the plaintiff's property, across Allds Street, is a sizable tract on which the Hunt homes for elderly persons are located, well back from Main Street. North of the Hunt property in the "General Business" zone is the Simoneau Shopping Centre where some fifteen (15) stores are located east of Main Street. South of the plaintiff's land on the east side of Main Street bordering the sidewalk is a one-story building which houses a real estate office and a sheet metal shop. Between this building and the next inter-secting street to the south are three two-family dwellings. Two streets further south the "A Residential" zone begins.

To the east, or rear, of plaintiff's property on Allds Street is a four-family house in a reconstructed dwelling. This is owned by the plaintiff and was originally on the lot for which a variance is sought. Allds Street is largely residential.

Directly opposite plaintiff's property on Main Street, in the "C Residential" zone, is a laundry and cleaning pickup establishment. North of this is a multiple-family building housing six to eight apartments and an insurance agency. Northwest of the intersection with Allds Street is a filling station, and next to it an A & P Super Market, south of a nine unit apartment house. Proceeding southerly from the laundry on the west side of Main are several multiple-family dwellings.

The plaintiff's land has been vacant since 1955, except for a small building at the rear of the lot which houses a dental laboratory. This building will be removed if a variance for a filling station is granted. Subject to the granting of a variance the plaintiff has entered an agreement to lease the premises to Mobil Oil Company at an annual rental of $15,000 for a 15-year term. The lot has a frontage of over 175 feet on Main Street and 125 feet on Allds Street. The proposed station would be located 70 feet back on Main Street and 50 feet from Allds Street. There was evidence that the use of the corner for a filling station would complicate the traffic flow at the intersection and hinder pedestrian travel, particularly to the Crowley School on Lake Street, north of this intersection.

The plaintiff testified that he acquired the property from

his father in 1957 and 1963 and that during his ownership he had received a dozen or more inquiries concerning use or purchase of the property for commercial use; but none for residential purposes. There was no evidence of any attempt on his part to market the property for residential use, and his testimony made it plain that he was not interested in selling. An expert witness called by the plaintiff valued the property for commercial use at $150,000 or more.

While the trial court granted plaintiff's request for a finding and ruling that "literal enforcement of the ordinance would result in unnecessary hardship", no express finding or ruling was sought or made that such hardship would result from "special conditions" (RSA 31:72 (III)) peculiar to the plaintiff's property. *Sweeney* v. *Dover*, 108 N.H. 307, 310, 234 A.2d 521, 523 (1967). If such a finding is implied by the court's order granting a variance, we consider it unsupported by the record. There was no evidence of conditions affecting the plaintiff's property, but not others subject to the same restrictions, which could be found to impose unnecessary hardship unless a variance were granted. *Sweeney* v. *Dover supra; Mills* v. *Manchester,* 109 N.H. 293, 295, 249 A.2d 679, 681 (1969); *see Bottomley* v. *Board of Appeals,* 354 Mass. 474, 238 N.E.2d 354 (1968); *Puritan-Greenfield Imp. Ass'n* v. *Leo,* 7 Mich. App. 659, 153 N.W.2d 162 (1967); *R-N-R Associates* v. *Zoning Bd.,* 100 R.I. 7, 13, 210 A.2d 653, 656 (1965); 2 Rathkopf, The Law of Zoning and Planning ch. 45, *ss.* 2-3, at 45-3, 45-8 (1962).

We think that the case before us is essentially indistinguishable from that of *Vannah* v. *Bedford,* 111 N.H. 105, 112, 276 A.2d 253, 258 (1971). As there stated: "Only if the decision of the Board could not be reached . . . by reasonable men was it subject to modification or vacation by the trial court. RSA 381:83. In our opinion the statutory presumption (RSA 31:78) that all findings of the Board were prima facie lawful and reasonable has not been overcome".

Accordingly the order of the trial court is set aside, and the order in this court is

*Appeal dismissed; judgment for the defendant.*

*Griffith,* J., did not sit; the others concurred.