Rockingham
No. 5928

WILLIAM R. CARTER v. TOWN OF DERRY

January 31, 1973

*Shaw & Eldredge (Mr. Carleton Eldredge* orally) for the plaintiff.

*Grinnell & Bureau (Mr. George H. Grinnell* orally) for the defendant.

Kenison, C.J. Appeal under RSA 31:77 from the decision of the board of adjustment of the defendant town denying the plaintiff's application for a variance to construct a seasonal dwelling on an undersized lot at Collette's Cove, Island Pond, in Derry, New Hampshire. Hearing before a Master (*Leonard C. Hardwick,* Esq.) resulted in a report recommending that plaintiff's petition be dismissed. The Superior Court (*Morris,* J.) approved the master's report, dismissed the petition, and reserved and transferred to this court all questions of law raised by the parties.

Plaintiff's property consists of two adjacent lots which he obtained in 1966. He purchased lot 5, consisting of approximately 8,000 square feet, from his father who had acquired the lot in 1959. He had previously purchased the adjoining lot 6, containing about 5,000 square feet, from a third party so that his total lot size was increased to 13,000 square feet. In 1961 the town of Derry had adopted an amendment to its zoning ordinance providing as follows: "Residential lots not supplied by a community or public water system or sewer system shall contain a mimimum of 25,000 square feet." None of the lots at Collette's Cove have public water or sewers, but each has its own well and septic tank or leaching field.

Plaintiff first applied to the building inspector in 1965 for a permit to build on lot 5 which still belonged to his father at the time. After his application was denied, he petitioned the zoning board of appeals for a variance to the minimum lot size requirement but withdrew his petition prior to any action thereon by the board. After acquiring title to both lots, plaintiff in 1966 again applied to the board for a variance which was denied after a public hearing. Upon his motion for a rehearing, the zoning board of appeals conducted another public hearing and subsequently notified the plaintiff that his application was again denied since no additional evidence had been produced to warrant reversal of the original

decision. Plaintiff then appealed to the superior court under RSA 31:77, and a master was appointed who conducted the hearing resulting in the dismissal of plaintiff's petition.

The zoning board viewed the premises on at least one occasion and determined that the variance should not be granted due to the small size of the lot and the potential health threat to the existing cottages nearby of adding another residence, with its concomitant leaching field or septic tank, to an already overcrowded area. RSA 31:72 III authorizes a zoning board to grant variances only "as will not be contrary to the public interest". It was findable that the plaintiff's lot even though it had 13,000 square feet, surrounded as it was by residences on lots for the most part of 5,000 square feet, could not safely support another septic tank or leaching field. "In communities which lack a public sewer system — and often lack a public water supply system as well — it is clear that relatively large lots may be necessary in order to provide a greater area for on-site disposal of sewage by use of septic tanks and to protect the ground water supply from contamination". Cunningham, *Land-Use Control – The State and Local Programs,* 50 Iowa L. Rev. 367, 389 (1965). "Lots of less than a half-acre are considered incapable of supporting both a septic tank and a water well. Therefore, the use of private on-site sewage disposal systems, especially when a public water supply is absent, requires at least half-acre lots, perhaps much larger ones if the soil consists of clay. Adequate sewage disposal and water supply are clearly related to public health and, in the absence of public facilities, are directly affected by the size of residential lots". Becker, *The Police Power and Minimum Lot Size Zoning – Part I: A Method of Analysis,* 1969 Wash. U.L.Q. 263, 306. To grant a variance to the plaintiff in this relatively congested residential area under these circumstances would be against the public interest, in contravention of RSA 31:72 III, and hence beyond the board's authority.

An additional pertinent fact entering into the board's decision to deny the variance was that a leaching field already existed on lot 5. In 1964 plaintiff's father conveyed an easement over lot 5 to plaintiff's sister who owned a lot nearby for the purpose of constructing and maintaining a sewage

disposal leaching bed on lot 5 to service the sister's residence. This was the second off-premises leach field plaintiff's sister constructed to service her house. The first off-premises leach field was constructed on plaintiff's father's lot as a condition required by the State and local inspectors before his sister could build on her undersized lot. We think these facts evidence the increasing sewage disposal problem in the area, which plaintiff should have been aware of, and demonstrate that the zoning board properly denied plaintiff's application for a variance. Consequently, while some hardship was worked upon plaintiff as a result of the board's refusal to grant the variance, it was plainly necessary for the health and safety of all persons residing and recreating in the area and was thus a proper exercise of the police power by the town. *See R. A. Vachon & Son, Inc. v. Concord,* 112 N.H. 107, 289 A.2d 646 (1972); Becker, *The Police Power and Minimum Lot Size Zoning – Part I: A Method of Analysis,* 1969 Wash. U.L.Q. 263, 306.

For the first time in this case plaintiff on appeal argues that the application of the minimum lot size ordinance to his lot is unlawful because it renders his property valueless in contravention of the principles we recently enunciated in *Vachon supra.* We first note, however, that aside from not even advancing this theory at the hearing before the master so as to give him an opportunity to make findings and rulings on the matter, plaintiff introduced virtually no evidence on the value issue. The testimony and other evidence was insufficient on the issues of original cost, current market value, and decline in value to support even a speculation as to whether plaintiff's land was rendered valueless by the ordinance. Plaintiff failed to sustain his heavy burden of proof on this issue. RSA 31:78.

Nor was *Vachon* the first articulation of confiscatory regulation in New Hampshire. As far back as *Bigelow v. Whitcomb,* 72 N.H. 473, 484, 57 A. 680, 686 (1904), we stated the general principle that "to permanently deprive [a person] of the beneficial use of his property, or of the profits or income usually derivable therefrom, is not a reasonable regulation, but is an extinction of his right without corresponding compensation, and amounts to confiscation".

The plaintiff took title to lot 5 subject to his sister's leach field easement. There was also evidence in a letter from the chairman of the zoning board to the plaintiff that the board had considered and denied a request to build on lot 5 in 1963. That plaintiff's father also had been aware of the sewage disposal problems in the area is evident from the fact that he conveyed leach field easements to plaintiff's sister over two separate lots. Finally, it is clear from the record that plaintiff was aware at the time he purchased his lots not only of the specific zoning problems he might face in attempting to build on the lot but the general sewage disposal problem in this congested residential area as well.

The zoning board acted reasonably and lawfully in denying plaintiff's application for a variance to the minimum lot size ordinance, and the superior court's approval of the master's report and dismissal of plaintiff's petition was correct. RSA 31:78; *Vannah v. Bedford,* 111 N.H. 105, 276 A.2d 253 (1971); *Glidden v. Nottingham,* 109 N.H. 134, 244 A.2d 430 (1968); *see* Michelman, *Property, Utility, and Fairness: Comments on the Ethical Foundations of "Just Compensation" Law,* 80 Harv. L. Rev. 1165 (1967).

*Exceptions overruled.*

All concurred.