Rockingham
No. 6344

RYE BEACH VILLAGE DISTRICT

v.

MAURICE BEAUDOIN *& a.*

January 31, 1974

2

*Casassa & Mulherrin* and *Perkins, Holland, Donovan & Beckett (Mr. Robert B. Donovan)* for the plaintiff.

*James A. Connor* and *Eaton, Eaton, Ross, Moody & Solms (Mr. Clifford J. Ross* orally) for the defendants.

DUNCAN, J. The plaintiff seeks by this bill in equity to enforce its zoning ordinance with respect to property of the defendants within the district. Title to the land stands in the name of the defendant corporation, At Last, Inc., while the seven structures situated thereon are in the names of the eight individual defendants, consisting of four married couples who hold 999-year leases from the

corporate defendant. There was a hearing before the Court (*Keller*, C.J.) who made certain findings of fact and transferred to this court exceptions of the parties and five questions of law without ruling as hereinafter more particularly appears.

We find no merit in the defendants' attack upon the validity of the district's several zoning measures, reflected in the first three transferred questions as follows: "1. Did Chapter 195 of the New Hampshire Laws of 1905 effectively establish the Rye Beach Village District? 2. Did Chapter 292 of the New Hampshire Laws of 1937 effectively confer zoning powers upon the Rye Beach Village District? 3. Is the Rye Beach Village District Zoning Ordinance as enacted in 1937, and amended in 1957 and 1963, valid?"

Although Laws 1905, ch. 195 establishing the district failed to describe an easterly boundary line, the description embodied in the statute commences and ends at the "Atlantic ocean", and the easterly boundary was clearly intended to coincide with a portion of the boundary of the town of Rye of which the district is a part. *See State v. Zetterberg*, 109 N.H. 126, 244 A.2d 188 (1968). The boundaries described are sufficiently specific to exclude any reasonable possibility of mistake. *See also Hampton v. Palmer*, 102 N.H. 127, 131, 153 A.2d 796, 799 (1959).

The fact that the call of the first meeting of the district was addressed to the "inhabitants qualified to vote in district affairs" rather than to "legal voters residing" therein (Laws 1905, 195:2) does not impress us as a viable ground of attack.

Similarly, the fact that the title of Laws 1937, ch. 292, conferring zoning and planning powers upon the Rye Village District, referred to it as a "precinct district" rather than a "village district", the term used in the body of the act, cannot be held to vitiate exercise of the powers conferred upon the district by section 1 of the act. *Vera &c. Co. v. State*, 78 N.H. 473, 102 A. 463 (1917).

The defendants also question the validity of the district's 1937 zoning ordinance upon the grounds of lack of a comprehensive plan, and failure to provide notice of the pro-

posed zoning enactment by posting at two public places as required by statute. P.L. 57:2, now RSA 52:2. The fact that the zoning ordinance provides for a single zone or district only does not establish lack of a comprehensive plan, in view of the character of the district. *Plainfield v. Hood,* 108 N.H. 502, 240 A.2d 60 (1968); *Rochester v. Barcomb,* 103 N.H. 247, 253, 169 A.2d 281, 285 (1961).

One of the two places of posting notice of the district meeting was the Rye Beach Club, which the trial court found was "not a public place". If correctly found not public in the sense that the club was not publicly owned, the record however showed it to be public in the sense that it was frequented by members of the public to an extent calculated to furnish adequate public notice. *Russell v. Dyer,* 40 N.H. 173, 187-88 (1860); *see McKinney v. Riley,* 105 N.H. 249, 197 A.2d 218 (1964).

Any lingering doubt concerning the validity of adoption of the ordinance is dispelled by the provisions of Laws 1970, ch. 69, legalizing the proceedings of 1937, since the notice of the meeting was adequate to satisfy due process requirements under *Calawa v. Litchfield,* 112 N.H. 263, 296 A.2d 124 (1972), and was such notice as the legislature "could have authorized originally". *Id.* at 264, 296 A.2d at 125; *see Mullane v. Central Hanover Tr. Co.,* 339 U.S. 306 (1950); *Sampson v. Conlon,* 100 N.H. 70, 119 A.2d 707 (1955).

The first three transferred questions are answered in the affirmative.

The fourth and fifth questions transferred by the trial court are as follows: "4. Is the ownership and occupancy of the premises in question by the defendants a legal use under the Zoning Ordinance, either as a non-conforming use or otherwise? 5. Is the plaintiff estopped from undertaking, on the basis of the Zoning Ordinance, to prevent the defendants' present use and occupancy of the premises?"

To establish the legality of their use of the premises, the defendants rely upon the use made by their predecessor in title for sixteen years between 1952 and 1968. Previously the buildings had been used as public bath houses, both

before and after adoption of the 1937 ordinance. Defendants' predecessor, Mrs. Annie Schlott, acquired the seven structures in 1952, and in the same year was given permission to use them for single-family use, although this was a use permitted by the ordinance and required no administrative action. In 1953, permission was denied to convert them into two single-family residences, upon the ground that the lot size was insufficient to comply with the requirements of the ordinance for two units.

The seven structures were ranged in a row, side by side along the shore, each separated from the other by a narrow space. Situated on a lot some 200 feet long and 80 feet deep between Ocean Boulevard and the ocean, they cover an area approximately 95 by 30 feet. Soon after acquiring them, the Schlotts connected them by sheathing along the front and rear, so that they present the appearance of a single structure.

The court found that they were never in fact used as a single-family residence, but had been used for multi-family purposes from 1952 to 1968, the Schlotts occupying one unit, and various relatives of the Schlotts occupying the other units during the summer seasons, "for the greater part of the time that Annie Schlott owned the property".

The court found that in 1952 the Schlotts had installed a kitchen and a bathroom in each of six of the seven units, together with plumbing and electricity. The court further found that the evidence "does not establish that the plaintiff had actual knowledge of the changes made by the Schlotts in the premises, nor of the nature of the occupancy during the Schlott ownership."

The defendants' contention that the use made of the premises after purchase by the Schlotts has not materially differed from the historic nonconforming use of the structures as public bath houses prior thereto, is one that cannot be accepted. Public bath houses on our short coast line do not come equipped with kitchens, bathrooms, and sleeping facilities, so as to be suitable for twenty-four hour occupancy. Nor can six kitchens and six bathrooms be considered "accessory uses customarily incident" to the use

of premises as a one-family dwelling or detached two-family dwelling permitted by the 1937 ordinance. *Sullivan v. Investment Trust Co.,* 89 N.H. 112, 193 A. 225 (1937). Accordingly the fourth question transferred by the trial court is answered in the negative.

A like answer must be given to the fifth question. With respect to the issue of estoppel the trial court found that "on the day when the sale to the defendants was completed, although just prior thereto, the Chairman of the Board of Adjustment told the defendant Clifford Ross, that if the defendants bought and used the property as they said they would, they would never have any trouble from the Village District." The court also found that the defendants "in purchasing the property, in buying furniture and equipment and in making improvements, relied on the statement made by the Chairman [of the board of adjustment] and on the prior occupancy during the Schlott ownership." In response to requests by the plaintiff for findings that the defendants knew or should have known that division and use of the property for four family units was in violation of the ordinance, and that defendant Ross, to whom the statement of the chairman was found to have been made, knew or should have known that he could not place reliance on oral statements of a single member of the board of adjustment, the trial court stated that it "intended to include these in the transferred question relative to estoppel."

While in a proper case estoppel may be a defense to an action by a municipality (*see Bigwood v. Merrimack Village District,* 108 N.H. 83, 87, 229 A.2d 341, 344 (1967)) failure to enforce an ordinance cannot furnish ground for estoppel against subsequent enforcement. *Bianco v. Darien,* 157 Conn. 548, 254 A.2d 898 (1969); *Building Comm'r v. C & H Co.,* 319 Mass. 273, 283, 65 N.E.2d 537, 543 (1946); *see Town of Weare v. Stone,* 114 N.H. 80, 314 A.2d 638 (1974); *State v. Hutchins,* 79 N.H. 132, 105 A. 519 (1919).

Nor will estoppel arise out of unauthorized acts or statements of a public official. Prior to purchasing the premises in question, one or more of the defendants had attended

a hearing upon a petition filed by counsel for Mrs. Schlott seeking permission to use the property in condominium or "unit ownership" (RSA ch. 479-A) or "some substantially similar" method. This was denied a scant few days before the alleged conversation between Ross and the chairman of the board of adjustment. Lack of authority on the part of the chairman to grant a variance or waive enforcement must have been evident to the defendants, or at least to those who were members of the bar, and reliance on his assurance could be of no avail to establish an estoppel where there was neither authority nor apparent authority to give it, and reliance upon it was unreasonable. *City of Jamestown v. Miemietz,* 95 N.W.2d 897 (N.D. 1959); *Margolis v. Insurance Company,* 100 N.H. 303, 308, 125 A.2d 768, 772 (1956). The defendants were "not entitled, as against the [district] to rely on the [chairman's] asserted or assumed exercise of authority not possessed." *Storrs v. Manchester,* 88 N.H. 139, 142, 184 A. 862, 864 (1936); *Trustees &c. Academy v. Exeter,* 90 N.H. 472, 494-95, 27 A.2d 569, 586 (1940).

The exceptions of the parties to findings of fact are overruled. Other exceptions are disposed of by the foregoing answers to the transferred questions.

*Remanded.*

All concurred.