Rockingham
No. 7299

MAURICE BEAUDOIN & a.

v.

RYE BEACH VILLAGE DISTRICT

December 30, 1976

*James A. Connor* and *Clifford J. Ross (Mr. Connor* and *Mr. Ross* orally) for the plaintiffs.

*Casassa, Mulherrin & Ryan* and *John J. Ryan (Mr. H. Alfred Casassa* orally) for the defendant.

GRIFFITH, J. The plaintiffs appealed to the superior court pursuant to RSA 31:77 from the denial by the Rye Beach District Zoning Board of the plaintiffs' request for a variance of the dis-

trict zoning ordinance that would permit the ownership and occupation by the four plaintiff couples of four separate sections of a building on property zoned for one family dwellings. The Trial Court *(Douglas,* J.) found the board's denial of the variance unreasonable and unjust and granted the variance. The defendant's exceptions were reserved and transferred.

The property consists of 16,600 square feet of land on the beach, bounded on the east by the Atlantic Ocean and on the west by Ocean Boulevard. In 1952 the property was purchased by Annie Schlott. At the time of purchase, there were seven bathhouses on the property which Mrs. Schlott and her husband obtained permission from the zoning administrator to convert into a single dwelling, a permitted use in the district. The Schlotts installed exterior siding on the east and west side of the bath houses so that they appeared as one building although there remained a small space between the individual units inside the siding. During the summer of 1952, they installed six kitchens and six bathrooms together with electricity and plumbing. Two septic tanks serve the property.

In 1953 the Schlotts applied to the board of adjustment for permission to divide the property into two separate units, one to be kept by the Schlotts, and the other to be owned by Mrs. Schlott's sister. This application was denied. During most of the period from 1952 until 1968, the seven units were occupied during the summer season by five different couples who were related by blood or marriage to the Schlotts. The Schlotts occupied only one unit.

In 1968 the plaintiffs agreed to purchase the property from Mrs. Schlott providing the Rye Beach District would authorize in writing the division of the property into four units and separate transfers to the four couples. A petition to the Rye Beach Village District Zoning Board to permit this was denied August 20, 1968. However the chairman of the board told plaintiff Ross, after the denial, that if the plaintiffs bought and used the property, as they said they would, they would never have any trouble from the village district. In reliance on this statement and the prior occupancy during the Schlott ownership, the plaintiffs purchased the property on August 23, 1968, taking title initially in the name of James Connor. James Connor then transferred the property to a voluntary corporation called At Last, Inc., which in turn leased for 999 years separate units to the four couples as planned for the origi-

nal purchase. Covenants restricting use and rentals were agreed upon by the plaintiffs and they occupied their respective units and made certain improvements.

In December of 1969 the Rye Beach Village District brought a bill in equity against the plaintiffs, reciting that their conveyance and leases created multiple ownerships in the property in violation of the single family restriction on the property. The village district asked to have the conveyance to the corporation and the subsequent leases declared void. Various issues raised by the parties in that case were transferred to this court. In *Rye Beach Village District v. Beaudoin*, 114 N.H. 1, 315 A.2d 181 (1974), we held that the village district zoning ordinance was valid and that the village district was not estopped from enforcing its ordinance by reason of the statement by the chairman of the zoning board to the plaintiff Ross. The petition for a variance and the present appeal from the denial by the zoning board followed this decision.

In the present case the trial court had before it the transcript of the earlier trial, the findings of the trial court in that case, a transcript of the proceedings before the zoning board and such further evidence as the parties offered. The trial court made rather extensive findings and ruled that by a balance of the probabilities, on the evidence before it, the order of the zoning board denying plaintiff's petition was "unjust or unreasonable" (RSA 31:78) and granted the variance. The evidence and findings of the trial court do not support its order overruling the zoning board and the granting of a variance to the plaintiffs.

The trial court's reliance on *St. Onge v. Concord*, 95 N.H. 306, 63 A.2d 221 (1949), as providing an analagous factual basis for its decision was misplaced. *St. Onge* was decided under RSA 51:65 (1942), which provided for a trial de novo in the superior court on appeals from zoning boards and authorized the court to make such order "as justice may require." Under this statute the superior court on the evidence presented in the trial de novo could substitute its judgment for that of the zoning board. Laws 1949, ch. 278 repealed R.L. 51:65 (1942) and restricted the authority of the superior court on zoning appeals. RSA 31:78.

Additional evidence may be introduced in the superior court (*Conery v. Nashua*, 103 N.H. 16, 164 A.2d 247 (1960)), but there is no trial de novo. Under the present law the burden of proof is on the appealing party to show that the order of the zoning board is unreasonable or unlawful, all findings of the board are prima facie lawful and reasonable, and the superior court may not set

them aside except for errors of law, unless persuaded by a balance of the probabilities, on the evidence before it, that said order is unjust or unreasonable.

It follows that the trial court may not substitute its judgment for that of the zoning board. A finding by the trial court that the order of the zoning board is unreasonable or unjust is dependent upon a preliminary ruling "as a matter of law that the evidence compelled a contrary finding by the board . . . ." *Sweeney v. Dover,* 108 N.H. 307, 310, 234 A.2d 521, 523 (1967).

The zoning board in this case considered the petition for variance in accordance with the requirement set forth in *Gelinas v. Portsmouth,* 97 N.H. 248, 250, 85 A.2d 896, 898 (1952). "In order to support a variance, it must be found that: (1) no diminution in value of surrounding properties would be suffered; (2) granting the permit would be of benefit to the public interest; (3) denial of the permit would result in unnecessary hardship to the owner seeking it; (4) by granting the permit substantial justice will be done; (5) the use must not be contrary to the spirit of the ordinance." The zoning board found that the plaintiffs satisfied the first requirement but not the remaining four and denied the variance.

The purpose of zoning an area for single family use is to prevent the "overcrowding of land" and "to avoid undue concentration of population." RSA 31:62; *Wentworth Hotel, Inc. v. New Castle,* 112 N.H. 21, 25, 287 A.2d 615, 618 (1972). In this case, there was evidence before the board that the plaintiff's multi-family use was creating parking problems in the area, with concomitant road hazards, and that the size of the property did not allow the installation of adequate septic systems to serve four families, thereby posing a potential threat to the surrounding ecology. Such considerations supported the board's finding that the public interest was being adversely affected by the plaintiff's use and that the spirit of the ordinance was being violated. *See Carter v. Derry,* 113 N.H. 1, 300 A.2d 53 (1973); *Wentworth Hotel, Inc. v. New Castle,* 112 N.H. 21, 287 A.2d 615 (1972); *Vannah v. Bedford,* 111 N.H. 105, 276 A.2d 253 (1971). The board's rulings as to substantial justice and unnecessary hardship find sufficient support in the fact that the plaintiffs bought the property with full knowledge of the zoning regulation, and that Mrs. Schlott's petitions for a variance had twice been denied. *See Mills v. Manchester,* 109 N.H. 293, 249 A.2d 679 (1969).

The finding by the trial court that "there is no other area of the

Village District so nonsingle family residence in character as the one in which the building in question sits in the middle of " did not require the zoning board to further permit "non-single family residence[s]". *See Simoneau v. Nashua,* 112 N.H. 18, 287 A.2d 620 (1972); *Vannah v. Bedford,* 111 N.H. 105, 276 A.2d 253 (1971).

The trial court took a view and found that the premises would be useless as a single family residence. Based on this finding the court ruled that because of the inutility of the building as a single family residence the board "could not reasonably find that the applicant's evidence" did not meet "the legal requirements for the issuance of a variance" relying on *Bois v. Manchester,* 113 N.H. 339, 306 A.2d 778 (1973). The difficulty with this approach lies in the past history of the property. The Schlotts obtained a permit to convert the seven bathhouses into a single family residence. If the alteration they installed did not render the premises suitable as a single family residence they were in contravention of the zoning law. In the previous case, the trial court specifically found that the evidence did not establish that the defendant "had actual knowledge of the changes made by the Schlotts in the premises, nor of the nature of the occupancy during the Schlott ownership." The plaintiffs purchased the property with full knowledge of the history of the property including the denial of the Schlott's petitions for variances. It follows that any inutility of the premises for the present permitted use cannot be relied upon as a basis for a variance. *Arsenault v. Keene,* 104 N.H. 356, 187 A.2d 60 (1962); *Mills v. Manchester,* 109 N.H. 293, 295, 249 A.2d 679, 681 (1969).

"We think that the case before us is essentially indistinguishable from that of *Vannah v. Bedford,* 111 N.H. 105, 112, 276 A.2d 253, 258 (1971). As there stated: 'Only if the decision of the Board could not be reached . . . by reasonable men was it subject to modification or vacation by the trial court. RSA 381:83. In our opinion the statutory presumption (RSA 31:78) that all findings of the Board were prima facie lawful and reasonable has not been overcome.'" *Simoneau v. Nashua,* 112 N.H. 18, 20, 287 A.2d 620, 622 (1972).

Ordinarily we do not consider comment upon a dissenting opinion to be within the ambit of a majority opinion. However, the unusual character of the dissent in this case prompts some response. The dissent appears to interpret the present appeals statute (RSA 31:78) as permitting the trial court to overturn the findings of a zoning board as "justice may require," which was the standard under the old appeals statute (R.L. 51:65 (1942)). The

rule thus espoused is announced as a tardy dissent to *Sweeney v. Dover,* 108 N.H. 307, 234 A.2d 521 (1967), which was published without a dissent. It should be noted that the proposed new rule is also contrary to the appeal standard in *Vannah v. Bedford,* 111 N.H. 105, 276 A.2d 253 (1971); *Simoneau v. Nashua,* 112 N.H. 18, 287 A.2d 620 (1972) and the standard endorsed in the opinion of *Grimes,* J., in *Hanson v. Manning,* 115 N.H. 367, 341 A.2d 764 (1975).

*Defendant's exceptions sustained.*

BOIS, J., did not sit; GRIMES, J., dissented; the others concurred.

GRIMES, J., dissenting: My difference with the court in this case stems from my belief that the court has been applying the wrong test under RSA 31:78. It is true that there is not now a trial de novo in the superior court *(Gelinas v. Portsmouth,* 97 N.H. 248, 85 A.2d 896 (1952)) and that *St. Onge v. Concord,* 95 N.H. 306, 63 A.2d 221 (1949) no longer may be relied upon. However, the present statute gives the findings of the board only a *prima facie* presumption of reasonableness; a presumption which the statute itself says may be overcome if "the court is persuaded by a balance of probabilities, on the evidence before it, that said order or decision is unjust or unreasonable." *See HIK Corporation v. Manchester,* 103 N.H. 378, 381, 172 A.2d 368, 369 (1961).

I fail to see how this simple test can be interpreted as a requirement that before the burden can be met, it must be "rule[d] as a matter of law that the evidence compelled a contrary finding by the board." The statement was made in *Sweeney v. Dover,* 108 N.H. 307, 310, 234 A.2d 521, 523 (1967), without any supporting authority. Although I did not write a dissent in that case, the opinion itself shows that the court was divided. The same harsh rule was carried over into *Vannah v. Bedford,* 111 N.H. 105, 276 A.2d 253 (1971) and in *Simoneau v. Nashua,* 112 N.H. 18, 287 A.2d 620 (1972). Being bound by prior cases, I stated in *Hanson v. Manning,* 115 N.H. 367, 341 A.2d 764 (1975), that an appellant has a heavy burden under the cases. This present case has convinced me that it is an almost impossible burden and that it should no longer stand. The requirement of *Sweeney* quoted above from the majority opinion confines the court to errors of law whereas the statute expressly permits the burden to be overcome as a matter of fact.

To me it is clear that the statute permits the superior court to consider additional evidence and then to decide whether it is persuaded by the balance of probabilities that as a matter of fact the decision is either unjust or unreasonable. This is not a substitution of judgment as in a trial de novo.

Moreover the test used by the court ignores the fact that the statute authorizes the setting aside of decisions of the board not only when they are unreasonable but also if they are "unjust." This is similar to the old statute which authorized the court to do what "justice may require." To the extent that the cases relied on by the court require more than a finding by a mere balance of probability that the decision was unjust or unreasonable, I would overrule them.

The trial court in this case put great stress on the importance of what was seen on the view. *Gelinas v. Portsmouth*, 97 N.H. 248, 85 A.2d 896 (1952); *Conery v. Nashua*, 103 N.H. 16, 164 A.2d 247 (1960). The finding that the units would be useless as a single family residence is based on the essential character of the separate structures without any hall or passage between the separate units. This finding is not dependent upon the alterations which the court says cannot be considered.

For over twenty years the property has been put to the same use as plaintiffs have been using it. From 1952 until plaintiffs purchased them in 1968 the seven units which were separately metered for electricity were occupied by five different families and plaintiffs have merely continued the same character of use.

The trial court found that the property sits in the middle of the most "non-single family residence area" of the district and that its use would not alter the essential character of the area or in any way diminish the value of the surrounding properties. The evidence overwhelmingly supports these findings. There is compelling evidence that there are "special conditions" which set this property apart from all other property in the district. *See Sweeney v. Dover*, 108 N.H. 307, 234 A.2d 521 (1967).

After having heard additional evidence and taken a view the importance of which was repeatedly stressed, the court in this case specifically found on the evidence as a whole that the plaintiffs had met their burden of proof under RSA 31:78 and that the court was "persuaded by the balance of probabilities that the order or decision is 'both' unjust and unreasonable." Because I consider that there was ample support for this finding, I would uphold the trial court.