Original
No. 7957

*In re* JACK O' LANTERN, INC.

June 19, 1978

*Stanton E. Tefft* and *Daniel J. Harkinson*, of Manchester (*Mr. Tefft* orally), for the plaintiff.

*David H. Souter*, attorney general (*James E. Morris*, attorney, orally), for the State.

DOUGLAS, J.    This is an appeal by Jack O'Lantern, Inc., d.b.a. Jack O'Lantern Resort, pursuant to RSA 541:6, challenging adverse findings and rulings by the associate highway commissioner. The

principal issues relate to whether a certain sign erected by a New Hampshire corporation in Woodstock, New Hampshire, constitutes a valid on-premises sign and whether pressure by a federal bureaucrat unduly tainted a State administrative hearing. We reverse.

The Jack O'Lantern Resort, located along route 3 in Woodstock, New Hampshire, was established in 1948. As northward construction of Interstate Highway 93 continued in the late 1960's and early 1970's, that highway divided the land owned by the Resort, leaving approximately 113 acres west of the turnpike. The western part of the resort did not contain any buildings; none of the primary activity of the resort occurred there. For several years the resort brochure had, however, reflected the fact that guests of the resort could use hiking trails on and around "Mount Pumpkin," located to the west of the interstate highway. Access to the 113 acres is obtained by either crossing under the highway through a culvert or by travelling north on route 3 and doubling back along a right-of-way to the hiking trail area.

In early 1975 the president of the corporation approached the State highway department to determine whether signs might be erected on the western portion of the corporation's land. The highway department had not adopted any rules at that time, nor have they yet adopted rules pursuant to a statutory grant of authority, RSA 249-A:5 IV(b), VI (Supp. 1975). *See State v. Hutchins*, 117 N.H. 924, 380 A.2d 257 (1977). The president of the corporation, Robert Keating, determined to attempt to sell the land. A 728-square-foot sign was erected indicating that the land was for sale and that interested parties should apply at the Resort.

Certain businesses adjacent to interstate highways may maintain an on-premises sign that states the name and address of the owner and an identification of the services produced or found on the property. No more than one such sign advertising activities conducted on the real property "shall be permitted more than 50 feet from the advertised activity...." RSA 249-A:5 III(c) (Supp. 1975). Subsection VI provides that no such sign will be permitted that does not conform to national standards set forth in the Code of Federal Regulations. Federal regulations permit on-premises signs advertising activities that are conducted upon the real property on which the signs are located. 23 C.F.R. § 750.105(a) (1977). Furthermore, no sign may exceed 150 square feet in area except on-premises signs not more than 50 feet from the advertised activity being conducted upon the real property that contains the sign. 23 C.F.R. § 750.108(g) (1977).

After the sign was erected, employees of the department of public works and highways notified the corporation that the sign went too far in advertising land for sale, in part because of a large pumpkin painted on the sign that has always been the logo of the resort. A series of conferences and negotiations ensued, culminating in a hearing on October 17, 1975, before the associate commissioner of the New Hampshire Department of Public Works and Highways. He ruled that the sign advertised an activity not conducted on the property and ordered its removal. Upon Jack O'Lantern's timely request for a rehearing, the order for removal was suspended pending modification of the sign. The sign was changed to substitute "hiking trails" for the words "land for sale," and a further hearing was held on June 30, 1977, before the associate commissioner. On October 5, 1977, he issued findings of fact and another order for removal of the sign. A timely motion for rehearing and appeal was made to the court under RSA 541:6.

At the second hearing the associate commissioner did not doubt that there are hiking trails on the western side of the highway, nor that the nearest hiking trail was less than 35 feet from the sign. Nevertheless, the associate commissioner found that "notwithstanding the sign's reference to 'Hiking Trails', its primary purpose is to advertise the Jack O'Lantern Resort, whose principal business and services are not conducted or offered on the particular parcel of property where the sign is located." The sign was found to be a nuisance within the meaning of RSA 249-A:9 (Supp. 1975), and was ordered removed.

The State relies upon *Mannone v. Whaland*, 118 N.H. 86, 382 A.2d 918 (1978), for the proposition that there must be a showing by Jack O'Lantern that there was no evidence presented to sustain the order. As *Mannone* pointed out, to meet the burden of proof on appeal from a decision of a State administrative agency the appellant must show that the order appealed from is clearly unreasonable or unlawful. The presumption in favor of the administrative decision could be overcome by a showing that "no evidence was presented in the record to sustain the order." *Mannone v. Whaland*, 118 N.H. at 88, 382 A.2d at 919. This, however, is not the only limit on the discretion of an administrator. Total absence of evidence is not required. Even if there is evidence to support the order, it may be set aside if "by a clear preponderance of the evidence . . . such order is unjust or unreasonable." RSA 541:13; *Beaudoin v. Rye Beach Village Dist.*, 116 N.H. 768, 773, 369 A.2d 618, 622 (1976) (Grimes, J. dis-

senting). Here the commissioner, despite the language of RSA 249-A:5 III, utilized a test involving "primary purpose" and "principal business." This was an erroneous test. An agency may not add to, change, or modify the statute by regulation or through case-by-case adjudication. *Reno v. Hopkinton*, 115 N.H. 706, 707, 349 A.2d 585, 586 (1975). When an agency focused on the purpose of the taxpayer rather than the treatment received by the land, and employed a primary use test under the provisions of the current use taxation statute, we struck down such a determination. *Blue Mountain Forest Association v. Croydon*, 117 N.H. 365, 373 A.2d 1313 (1977). We find the same infirmity with the decision at issue before us.

Additionally, this decision might have been colored by the involvement of a federal official who, in administering the interstate highway system, conveyed an implied, if not actual, threat that a contrary decision could lead to a loss of federal bonus money provided to New Hampshire by the Federal Highway Administration. Before the first hearing in this case, the Division Administrator of the Federal Highway Administration submitted *ex parte* to the hearing officer a written opinion that the sign did not qualify for an exemption and must be removed. After the hearing, the federal official advised that modification of the sign must be made by the State "in an expeditious manner." At the first hearing, the federal official, Mr. Comstock, when asked if the State hearing officer was free to come to his own conclusion replied, "In some ways yes, in some ways no, I suppose." He then discussed a possible loss of federal bonus money and agreed that the letter he had written clearly implied that federal funds could be in jeopardy. This was apparent to the associate highway commissioner. In concluding the second hearing, he said that "if we execute a ruling that is not concurred in by the Federal Government that there is a penalty clause for making an independent judgment. That's what it boils down to."

■ ■ The growth in federal aid raises the ever-present danger that this State may no longer be the independent sovereign required by New Hampshire Constitution part 1, article 7. Threats by federal bureaucrats, such as occurred in this case, can taint an otherwise fair and proper State administrative hearing. The State hearing officer in this case conducted a full hearing; however, the danger "expressed" by Mr. Comstock that a "wrong" decision might have adverse funding consequences requires a reversal. "Recent cases have demonstrated the difficulty in formulating broadly phrased rules regarding the due process requirement of an impartial tribunal in

situations where the tribunal has come in contact with the case in some other capacity." *Burhoe v. Whaland*, 116 N.H. 222, 223, 356 A.2d 658, 659 (1976). It is imperative that the neutrality and impartiality of administrative agencies not be impaired. The conduct of Mr. Comstock presents at least the appearance that pressure was applied to the State. *See id.*; *Atherton v. Concord*, 109 N.H. 164, 171, 245 A.2d 387, 392 (1968) (Grimes, J., dissenting); *cf. Ward v. Village of Monroeville*, 409 U.S. 57, 60 (1972).

Because the sign is within fifty feet of an on-premises activity, it is a valid on-premises sign.

*Order below vacated.*

All concurred.