CHICAGO AND NORTH WESTERN TRANSPORTATION COMPANY, Plaintiff,

v.

HURST EXCAVATING, INC., Defendant.

HURST EXCAVATING, INC., Counterclaimant,

v.

CHICAGO AND NORTH WESTERN TRANSPORTATION COMPANY, Defendant to Counter–claim and Third–Party Plaintiff,

v.

IOWA STATE UNIVERSITY OF SCIENCE AND TECHNOLOGY, Iowa State Board of Regents and State of Iowa, Third–Party Defendants.

Nos. C 75–2022, C 74–2021.

United States District Court, N. D. Iowa, E. D.

May 11, 1978.

C. A. Frerichs, Waterloo, Iowa, for plaintiff and counterclaimant, Hurst Excavating.

Frank W. Davis, Jr., T. Scott Bannister, David L. Charles, Des Moines, Iowa, for plaintiff and defendant to counterclaim and third party plaintiff, Chicago and North Western Transp. Co.

Richard C. Turner, Atty. Gen., Fred Haskins, Asst. Atty. Gen., Garry D. Woodward, Sp. Asst. Atty. Gen., Des Moines, Iowa, for third party defendants, Iowa State University of Science and Technology, Iowa State Board of Regents and State of Iowa.

## ORDER

McMANUS, Chief Judge.

This matter is before the court upon the parties' motions for summary judgment and the State of Iowa's motion to dismiss. All motions have been resisted.

The issues presently before the court arise from a permissive counterclaim filed by Hurst Excavating, Inc. (Hurst) against the Chicago and North Western Transportation Company (Railroad) for negligent injury to Hurst's property.

Specifically, for the purposes of this motion, the parties have agreed to the following facts. On April 21, 1977 Hurst was constructing, pursuant to a contract with Iowa State University of Science and Technology (State), a steam pipeline. This pipeline was being constructed in an excavation at the end of a spur track owned by the State. The excavation was within 8½ feet of the track and the pipeline was within 15 feet of the end of the track.

At the same time the Railroad was utilizing the spur track to deliver coal for use in the heating plant owned by the State when the lead car of an 11–car train left the track damaging the pipeline being constructed by Hurst. The Railroad was negligent in this regard and said negligence caused Hurst damage.

On or about September 22, 1965, the Chicago and North Western Railway Company, predecessor to the Railroad, and State entered into an agreement binding upon both the Railroad and the State, which contains the following language in paragraph 12:

In the event any equipment, material, structure, pole, or other article or obstruction shall be placed within 15 feet of the end of said track, then the Industry (State) hereby assumes all responsibility for and agrees to indemnify the Railway Company against all liability on account of loss or damage to property (except to property of the Railway Company) and injury to or death of any person or persons whatsoever (except employees of the Railway Company), caused by engines, cars, trains or other equipment running off the end of said track, from any cause whatsoever and without regard to negligence on the part of the Railway Company.

Likewise, on or about January 17, 1975, Hurst entered into an agreement with the State Board of Regents binding upon both Hurst and the State, which includes paragraph 21 of the specifications as follows:

The contractor shall indemnify and hold harmless the owner ... from any and all liability, loss, cost, damage and expense (including reasonable attorney's fees and court costs) resulting from, arising out of, or incurred by reason of any claims, actions, or suits based upon or alleging bodily injury, including death, or property damage arising out of or resulting from the contractor's operations under this Contract, whether such operations be by himself or by any subcontractor or by anyone directly or indirectly employed by either of them. The contractor shall obtain insurance for this purpose, which shall insure the interests of the owner and engineer as the same may appear, and shall file with the owner and engineer certificates of such insurance.

Under these facts, Hurst seeks damages from the Railroad. The Railroad seeks indemnity and contribution from the State under September contracts and the State seeks indemnity from Hurst under the January contract. The State has also moved to dismiss on grounds of sovereign immunity and lack of subject matter jurisdiction.

### State's Motion to Dismiss

The State has moved to dismiss the claims against it on two theories. First, the State contends that the action is barred by the eleventh amendment to the United States Constitution. This court has previously rejected a similar claim in *Greiner v. Olsen,* 498 F.Supp. 908 (N.D.Iowa 1976) on the theory that *Kersten Co., Inc. v. Department of Social Services,* 207 N.W.2d 117 (Iowa 1973) constituted a waiver of the state's immunity in contract actions. The court would at this time reaffirm its prior ruling and concludes that the defense of sovereign immunity has been waived in this case.

Next, the State argues that under the principles of *Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976) no subject matter jurisdiction exists. Both sides agree that no independent jurisdiction exists for the Railroad's claim against the State in this case. Hence, the concept of either ancillary or pendent jurisdiction must be relied upon to justify jurisdiction in this action. In this regard it seems equally apparent that where only private parties are involved, the circumstances of this case would justify the exercise of ancillary jurisdiction. *See generally,* 6 Wright & Miller, *Federal Practice and Procedure*: Civil § 1444. Clearly, as the Railroad points out in its brief, all claims arise from a common set of facts and consideration of the parties' convenience and overall judicial economy dictate having all claims settled in this action. The State, however, argues that the eleventh amendment presents an express or at least implied limitation on the court's power to exercise pendent or ancillary jurisdiction in this case. This argument is not well taken.

The eleventh amendment provides that the federal judicial power does not extend to suits against a state by citizens of other states. By interpretation this immunity has been interpreted to preclude suits by a citizen against his own state as well. *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). The amendment was passed after the decision in *Chisholm v. Georgia,* 2 Dall. 419, 1 L.Ed. 440 (1793), permitting such suits with the purpose of resurrecting the common law concept of sovereign immunity. This immunity is not absolute however and may be waived in which case the state is no longer protected from suit. *Parden v. Terminal R. Co.,* 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1963). Here, as indicated above, the court has found the requisite consent to suit by the state. Since the eleventh amendment is designed to protect the state treasury, the necessary intent to negate jurisdiction would appear to be lacking where that protection has been waived by the State itself. Along these lines the court finds nothing in the history of the amendment negating jur-

**4**

isdiction where the state has consented to suit.

*Railroad's Motion for Summary Judgment*

In its motion for summary judgment the Railroad seeks indemnity as a matter of law against the State under paragraph 12 of the September contract.

The core of the Railroad's argument is that under paragraph 12 of the contract, the State has accepted all responsibility for anything placed within 15 feet of the end of the track.

■ This appears to be the clear meaning of the language of the contract. Indeed, the State apparently does not dispute this interpretation of this clause, but claims paragraph 12 is void.[1] since it violates Article VII § 1 of the Iowa Constitution which provides:

> The credit of the State shall not, in any manner, be given or loaned to, or in aid of, any individual, association, or corporation; and the *State shall never assume, or become responsible for, the* debts or *liabilities of any* individual, association, or *corporation,* unless incurred in time of war for the benefit of the State. (emphasis added).

Section 1 of Article VII has consistently been construed by the Iowa Supreme Court as prohibiting the State from assuming secondary indebtedness or in other words the State may not become a surety for the debt of another. *Edge v. Brice,* 253 Iowa 710, 113 N.W.2d 755 (Iowa 1962); *Merchants' Union Barb Wire Co. v. Brown,* 64 Iowa 275, 20 N.W. 434 (1884); *Grout v. Kendall,* 195 Iowa 467, 192 N.W. 529 (Iowa 1923).

Here, the Railroad argues that the agreement should be reasonably construed to the effect that the State agrees not to place

items within 15 feet of the end of the track or to assume responsibility for any items so placed. With this construction, the argument continues, there is no assumption of the Railroad's liability by the State, but rather the State creates primary liability on its part.

This strains the construction of Article VII. The second clause clearly provides that the State shall not become responsible for the liabilities of any corporation and regardless of how paragraph 12 is construed, this is exactly what it accomplishes. That is, the State is agreeing to assume responsibility for the Railroad's liabilities.

It is clear that an indemnity agreement differs from a guaranty or suretyship in several particulars. *See* 41 Am.Jur.2d Indemnity § 4. However, these differences do not relate to the evils to which Article VII was directed. Specifically, the State is agreeing to undertake an indefinite liability and relying on the actions of another to keep this obligation from maturing. *Grout v. Kendall, supra.* Accordingly, the Railroad's motion for summary judgment will be denied.

*Hurst's Motion for Summary Judgment*

In its motion Hurst seeks summary judgment that paragraph 21 of the contract with the State provides only that Hurst indemnify the State from harm resulting from Hurst's own negligence. Hurst's motion is well taken to the extent that paragraph 21 does not cover the State's own negligence.

■ Under the Iowa law while it is clear that a party may validly contract for indemnity even against its own negligence, it is equally clear that the intent to do so must be clearly manifested and that general broad and all inclusive language is insufficient for the purposes. *Evans v. Howard R. Green Co.,* 231 N.W.2d 907 (Iowa 1975).

---

1. While the state claims paragraph 12 is void it does not claim Article VII precludes all indem-

nity and contribution but rather that paragraph 12 is void as a means for doing so.

Here that intent is lacking in paragraph 21. The paragraph specifically provides that that indemnity shall be for damages "resulting from, arising out of, or incurred by reason of ... actions, or suits based upon ... property damages arising out of or resulting from contractor's operations under this contract.... No reference is made to the State, but rather the clause refers only to actions of the contractor or his subcontractors. Under these circumstances the court cannot find the requisite intent.

There are, however, as the State points out, factual issues remaining on its right to indemnity under the contract making it inappropriate to enter summary judgment as to the entire claim.

It is therefore

ORDERED

1. State's motion to dismiss is denied.

2. Railroad's motion for summary judgment is denied.

3. Hurst's motion for summary judgment granted in part.