McDonough v. Keniston                    CV-96-586-B    09/12/97

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**Martin A. McDonough**

    **v.**                                         Civil No. C-96-586-B

**Carlene Keniston, et al.**

MEMORANDUM AND ORDER

Martin McDonough seeks damages from Carlene Keniston, his former wife; Joseph Keniston, Carlene Keniston's current husband; Caroline Douglas, an attorney who represented the Kenistons in a child custody dispute against McDonough; Charles Douglas, Caroline Douglas's former law partner; and the law firm Douglas & Douglas.  On November 22, 1996, McDonough filed a complaint asserting counts for malicious civil prosecution/defense (Counts I and VI), abuse of process (Counts II and VII), intentional infliction of emotional distress (Counts III and VIII), intentional interference with custody of a child (Counts IV and IX), civil conspiracy (Counts V and X), and partner's liability against Charles Douglas (Count XI).  McDonough later successfully moved to amend the complaint in order to clarify the factual basis for his claims.

The defendants move to dismiss under Fed. R. Civ. P. 12(b)(6), arguing that McDonough's complaint fails to state a claim upon which relief can be granted and that his action is barred by the statute of limitations. For the following reasons, I grant the motion in part and deny it in part.

## I.

McDonough alleges the following facts. On June 13, 1991, Carlene Keniston gave birth to a child she named Sky. Keniston told McDonough that he was Sky's father, but she did not allow him to have contact with the child. Soon after Sky's birth, Keniston moved with Sky to New Hampshire.

In October 1991, McDonough filed an action in Merrimack County Superior Court seeking custody of Sky. Three months later, McDonough filed an action to legitimate the child in the same court. In both actions, Keniston was represented by Caroline Douglas of the Douglas & Douglas law firm. McDonough alleges that as part of her defenses, Keniston and Douglas falsely and maliciously swore that McDonough was not Sky's natural father and that he had repeatedly assaulted and battered Keniston during her pregnancy.

In January 1992, Joseph Keniston, joined by Carlene, brought an action in Hillsborough County Probate Court seeking to adopt Sky. The Kenistons were again represented by Caroline Douglas. McDonough alleges that the Kenistons and Caroline Douglas again falsely and maliciously informed the court during this proceeding that McDonough was not Sky's natural father. They also allegedly failed to give McDonough notice of the adoption proceedings and falsely and maliciously informed the court that McDonough had been properly notified. The adoption was granted in April 1992.

In May 1992, McDonough filed a petition to open and set aside the adoption for lack of notice. Again, the Kenistons were represented by Caroline Douglas. McDonough alleges that the Kenistons and Douglas falsely and maliciously represented to the Court that they had given McDonough proper notice of the adoption proceedings, that McDonough was not Sky's natural father, and that McDonough had a history of physically harassing Carlene Keniston over an extended period of time. A justice of the superior court denied the petition, and McDonough appealed.

The New Hampshire Supreme Court ultimately vacated the adoption due to lack of notice. In re Sky D., 138 N.H. 543, 547 (1994). Following this action, McDonough filed a motion with the Merrimack County Superior Court for decisions regarding his

original petitions for custody and to legitimate the child.

While McDonough's motion for decision was pending, the Kenistons, again represented by Caroline Douglas, filed a petition for termination of McDonough's parental rights and a second adoption petition.  McDonough was served with process in Pennsylvania and traveled to New Hampshire to defend the action.  McDonough alleges that the petition for termination formally acknowledged that McDonough was Sky's natural father, but falsely and maliciously claimed that McDonough had abandoned him.

Finally, in October 1995, McDonough and the Kenistons entered into a court-approved stipulation whereby the Kenistons voluntarily withdrew their petition to terminate McDonough's parental rights and their petition for adoption by Joseph Keniston.  The stipulation also acknowledged McDonough's paternity, established a visitation agreement, granted joint legal custody to Carlene Keniston and McDonough, and granted physical custody to Carlene Keniston.

## II.

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) requires the court to review the complaint's allegations in the light most favorable to plaintiff, accepting all material

4

allegations as true, with dismissal granted only if no set of facts entitles plaintiff to relief.  See, e.g., Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Berniger v. Meadow Green-Wildcat Corp., 945 F.2d 4, 6 (1st Cir. 1991); Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989).  When defendants assert in a motion to dismiss that an action is barred by an affirmative defense such as the statute of limitations and the face of the complaint reveals that the action is so barred, the complaint must be dismissed.  See Aldahonda-Rivera v. Parke Davis & Co., 882 F.2d 590, 592 (1st Cir. 1989); DiMella v. Gray Lines of Boston, Inc., 836 F.2d 718, 719-20 (1st Cir. 1988).

Notwithstanding the liberal requirements of notice pleading and the deferential reading of a litigant's complaint required under Rule 12(b)(6), a district court must ensure that "each general allegation be supported by a specific factual basis." Fleming v. Lind-Waldock & Co., 922 F.2d 20, 23 (1st Cir. 1990).  Thus, a district court need not accept subjective characterizations, bald assertions, or unsubstantiated conclusions.  See Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52-53 (1st Cir. 1990); Dewey v. University of New Hampshire, 694 F.2d 1, 3 (1st Cir. 1982).  Moreover, while "the line between 'facts' and 'conclusions' is often blurred," Dartmouth Review,

5

889 F.2d at 16, the line must be drawn:

> It is only when such conclusions are logically compelled, or at least supported, by the stated facts, that is, when the suggested inference rises to what experience indicates is an acceptable level of probability, that "conclusions" become "facts" for pleading purposes.

Id.; see Fleming, 922 F.2d at 24; Correa-Martinez, 903 F.2d at 53.

Care is required in determining the sufficiency of a complaint to insure that "heightened pleading" requirements are invoked only if such requirements are specifically authorized by the Federal Rules of Civil Procedure. See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168 (1993) (comparing Fed. R. Civ. P. 8(a)(2)'s general pleading requirement with the particular pleading requirement of Fed. R. Civ. P. 9(b) and holding that a heightened pleading standard does not apply to civil rights claims). However, even under the general pleading requirements of Fed. R. Civ. P. 8(a), a complaint will not withstand a motion to dismiss if the plaintiff has merely recited the elements of the complaint's causes of action in conclusory terms. Fleming, 922 F.2d at 24. Notice pleadings require factual allegations which, if true, will establish all of the required elements of plaintiff's causes of

6

action.

**III.**

The defendants argue that McDonough's complaint should be dismissed because the facts alleged demonstrate that his claims are barred by the statute of limitations. The parties agree that the applicable New Hampshire statute is N.H. Rev. Stat. Ann. § 508:4(I) (1997). That statute provides:

> I. Except as otherwise provided by law, all personal actions . . . may be brought only within 3 years of the act or omission complained of, except that when the injury and its causal relationship to the act or omission were not discovered and could not reasonably have been discovered at the time of the act or omission, the action shall be commenced within 3 years of the time the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury and its causal relationship to the act or omission complained of.

McDonough filed this action on November 22, 1996. Therefore, if the acts giving rise to his causes of action occurred prior to November 22, 1993 and he discovered or should have discovered his injury and its causal relationship to those acts by November 22, 1993, I will dismiss his claims.

McDonough attempts to save his complaint from the statute of limitations by asserting that the statute should be tolled based on the doctrine of fraudulent concealment. When facts essential

7

to the cause of action are fraudulently concealed from a plaintiff by a defendant so that he has been induced not to commence a suit until after the time prescribed by statute, the statute of limitations will be tolled until the plaintiff discovers or reasonably should have discovered those facts. Cheshire Med. Ctr. v. W.R. Grace & Co., 764 F. Supp. 213, 216 (D.N.H.), vacated in part on reconsideration, 767 F. Supp. 396 (D.N.H. 1991); Shillady v. Elliot Community Hosp., 114 N.H. 321, 323 (1974); Lakeman v. LaFrance, 102 N.H. 300, 303 (1959). The fraudulent concealment rule, is "in the nature of an equitable estoppel," and justifies tolling of the statute of limitations based on the wrongful conduct of the defendant. Lakeman, 102 N.H. at 303-304. Facts giving rise to a claim of fraudulent concealment, once raised, must be pled with particularity under Fed. R. Civ. P. 9(b). J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc., 76 F.3d 1245, 1255 (1st Cir.), cert. denied, 117 S. Ct. 81 (1996).

McDonough does not explain what facts were fraudulently concealed so as to toll the statute of limitations. McDonough's complaint concedes that Carlene Keniston informed him that he was Sky's father before the child was born. McDonough also noted that he knew of Joseph Keniston's first adoption petition in

8

April 1992. No other facts necessary to inform McDonough of his causes of actions appear to have been concealed. Therefore, I decline to apply the doctrine of fraudulent concealment to his claims.

McDonough also argues that the abuse of process and interference with parental rights claims are "continuing torts" which were last committed in October 1995. He cites no authority for this proposition and I find the argument unpersuasive. These torts are based on discrete acts allegedly committed by the defendants. New Hampshire Rev. Stat. Ann. § 508:4 provides for a limitations period which begins to run upon the commission of those acts. McDonough has drafted his claims to avoid identifying which specific acts give rise to each individual claim. Instead, he attempts to apply the whole range of defendants' conduct to each count, arguing that because some acts are within the limitations period, all acts should be considered. New Hampshire law, however, makes clear that a limitations period begins to run when a plaintiff discovers his injury, even if he has not discovered its extent. Rowe v. Deere, 130 N.H. 18, 22 (1987). Once McDonough became aware of defendants' acts which gave rise to a claim, the limitations period began to run. Later acts which gave rise to additional claims cannot restart the

9

clock for earlier claims and a continuing injury from those earlier claims will not toll the limitations period.  For these reasons, I reject McDonough's continuing tort argument. Accordingly, I examine McDonough's complaint to determine whether any claims accrued after November 1993.

## A. Malicious Prosecution/Defense

One of the essential elements of a malicious prosecution or malicious defense action is a termination of proceedings in favor of the plaintiff.  ERG, Inc. v. Barnes, 137 N.H. 186, 190 (1993) (malicious prosecution); Aranson v. Schroeder, 140 N.H. 359, 367 (1995) (malicious defense).

Clearly, McDonough could not have brought an action for malicious prosecution or defense prior to the termination of proceedings.  See Aetna Cas. & Sur. Co. v. Kellogg, 856 F. Supp. 25, 28-29 (D.N.H. 1994).  Therefore, McDonough's actions for malicious prosecution and defense did not arise and the statute of limitations period did not begin to run on them until the proceedings terminated.

Joseph Keniston's first adoption petition and McDonough's motion to set aside the adoption terminated in June 1994 when the New Hampshire Supreme Court vacated the probate court's adoption order.  McDonough's and the Kenistons' other petitions terminated

10

by settlement in October 1995.  Therefore, McDonough's malicious prosecution and defense claims are not barred by the statute of limitations.

**B.    Abuse of Process**

To state an abuse of process claim, McDonough's complaint must allege facts which demonstrate that the defendants used legal process against him primarily to accomplish a purpose for which it is not designed, thus causing him harm.  Long v. Long, 136 N.H. 25, 29 (1992).  The "process" giving rise to an abuse of process claim must issue from a court.  Id. at 29-30 ("Process" is an "activity or procedure involving the exercise, or dependent upon the existence, of judicial authority").  "The gravamen of the misconduct for which [liability for abuse of process] is imposed is not the wrongful procurement of legal process or the wrongful initiation of . . . civil proceedings."  Id. (citation and quotation omitted).  Thus, "the initiation of vexatious civil proceedings known to be groundless is not abuse of process," but instead comprises a claim for malicious prosecution.  Business Publications, Inc. v. Stephen, 140 N.H. 145, 149 (1995) (citation and quotation omitted).

McDonough points to two issuances of process by the court which he argues constitute an abuse of process, the March 1992

11

adoption decree and the simultaneous service of the October 1994 petition for termination of McDonough's parental rights and Joseph Keniston's second adoption petition. The issuance of the March 1992 adoption decree, which McDonough alleges he discovered in April 1992, occurred over four years prior to the initiation of this lawsuit. An abuse of process claim based on that event is therefore barred by the statute of limitations. See N.H. Rev. Stat. Ann. § 508:4(I). The October 1994 service of process occurred within three years of the filing of this action, but nevertheless fails to state a valid abuse of process claim because the institution of an action by service of a summons and complaint does not constitute process within the meaning of the tort. Ann-Margret v. High Soc. Magazine, Inc., 498 F. Supp. 401, 407 (S.D.N.Y. 1980); Williams v. Williams, 246 N.E.2d 333, 335 (N.Y. 1969); cf. Business Publications, 140 N.H. at 149 (malicious initiation of suit does not constitute abuse of process). Therefore, I dismiss McDonough's abuse of process claims.

C.   **Intentional Interference with Custody of a Child**

Defendants argue that McDonough's count alleging an intentional interference with the custody of his child should be dismissed because New Hampshire does not recognize such a cause

12

of action.  Defendants are mistaken.  New Hampshire has explicitly recognized that "where there is an intentional interference with a parent's custody of his or her child, an injured parent is entitled to a remedy that completely compensates him or her."  Plante v. Engel, 124 N.H. 213, 217 (1983).  In this case, however, McDonough's claim is barred by the statute of limitations.

In Plante, the New Hampshire Supreme Court recognized a cause of action "where a parent has been awarded custody of a child by court decree and the noncustodial parent abducts the child."  Id.  McDonough's complaint alleges that the defendants initiated a proceeding for Joseph Keniston to adopt McDonough's son and succeeded in obtaining an adoption decree by falsely informing the court that McDonough was not the child's natural father.  The issuance of that decree served to deprive McDonough of his parental rights, including his right to legal custody of his child and his potential right to physical custody.  See N.H. Rev. Stat. Ann. § 170-B:20(II) (Supp. 1996).  According to the complaint, however, these acts and McDonough's discovery of them all occurred over three years prior to the commencement of McDonough's suit.  Joseph Keniston's second petition for adoption, filed after November 1993, was withdrawn pursuant to

13

the October 1995 settlement and therefore did not deprive McDonough of any parental rights. This act, therefore, cannot form the basis for his intentional interference with parental custody counts. Accordingly, I dismiss these claims.

## D.   Intentional Infliction of Emotional Distress

McDonough's intentional infliction of emotional distress claims are based on the defendants' allegations that McDonough was not Sky's natural father, that he abandoned Sky, and that he abused and harassed Carlene Keniston. At least some of these statements were allegedly made in connection with proceedings instituted after November 1993. As to those statements, the statute of limitations does not bar McDonough's claims of intentional infliction of emotional distress.

Having found that McDonough's malicious prosecution/defense and intentional infliction of emotional distress claims are not barred by the statute of limitations. I now go on to consider whether they otherwise state a valid claim.[1]

---

[1]  Because civil conspiracy can be based on any one of McDonough's underlying torts, it is not barred by the statute of limitations so long as one of those claims survives.

14

## IV.

### A.  Malicious Prosecution/Defense

McDonough alleges that the Kenistons and Caroline Douglas maliciously prosecuted and defended the various custody related actions in New Hampshire state court.  McDonough bases his assertions on the defendants' allegedly malicious and false accusations that he was not Sky's natural father, that he abandoned Sky, and that he abused and harassed Carlene Keniston.

To maintain his malicious prosecution action, McDonough must plead sufficient facts to demonstrate that he was subjected to a civil proceeding instituted by the defendants, without probable cause and with malice, and that the proceedings terminated in his favor.  ERG, Inc., 137 N.H. at 190; Hogan v. Robert H. Irwin Motors, Inc., 121 N.H. 737, 739 (1981).  Similarly, to maintain a claim of malicious defense, McDonough must plead facts which meet each element of the tort:

> One who takes an active part in the initiation, continuation, or procurement of the defense of a civil proceeding is subject to liability for all harm proximately caused, including reasonable attorneys' fees, if
>    (a) he or she acts without probable cause, i.e., without any credible basis in fact and such action is not warranted by existing law or established equitable principles or a good faith argument for the extension, modification, or reversal of existing law,
>    (b) with knowledge or notice of the lack of merit in such actions,

15

(c) primarily for a purpose other than that of securing the proper adjudication of the claim and defense thereto, such as to harass, annoy or injure, or to cause unnecessary delay or needless increase in the cost of litigation,
(d) the previous proceedings are terminated in favor of the party bringing the malicious defense action, and
(e) injury or damage is sustained.

Aranson, 140 N.H. at 367 (citation omitted).

Defendants argue that McDonough's malicious prosecution and malicious defense claims should be dismissed because he has failed to allege facts demonstrating that the relevant proceedings terminated in his favor. McDonough's complaint does not identify which actions were maliciously prosecuted or defended, but it clearly identifies six separate and distinct proceedings: (1) McDonough's petition to legitimate; (2) McDonough's petition for custody; (3) Joseph Keniston's first petition to adopt; (4) McDonough's petition to open and set aside the adoption; (5) the Keniston's petition for termination of parental rights; and (6) Joseph Keniston's second petition to adopt.

McDonough argues that the majority of the proceedings terminated in his favor when, in October 1995, the parties entered into a court-approved "Agreement and Stipulation." According to this stipulation, which he attaches to his amended complaint, the Kenistons agreed to withdraw their petition for

16

termination of parental rights and Joseph Keniston's petition to adopt. The stipulation awards joint legal custody to Carlene Keniston and McDonough and awards Carlene Keniston primary physical custody.

Defendants argue that all of McDonough's malicious prosecution/defense claims should be dismissed because they did not terminate in his favor. To show that a proceeding terminated in his favor, McDonough must demonstrate that "the court passed on the merits of the charge or claim against him under such circumstances as to show his innocence or nonliability, or show that the proceedings were terminated or abandoned at the instance of the defendant under circumstances which fairly imply the plaintiff's innocence" or nonliability. Robinson v. Fimbel Door Co., 113 N.H. 348, 350-51 (1973). In most circumstances, "where the prior proceeding was ended by a compromise or settlement, voluntarily and understandingly consummated by the accused, there is not such a favorable termination as will support the [malicious prosecution] action." Id. at 350 (citation and quotation omitted). This is because a settlement is meant to avoid a determination on the merits; it reflects ambiguously on the merits of an action because it results from the joint action of the parties, thus leaving open the question of the defendant's

17

innocence or liability. <u>McCubbrey v. Veninga</u>, 39 F.3d 1054, 1055 (9th Cir. 1994) (applying California law).

It is possible, however, that a settlement reached in a civil action is sufficiently conclusive of one party's position so as to constitute a "favorable termination." <u>See</u> <u>McGranahan v. Dahar</u>, 119 N.H. 758, 772 (1979) (finding settlement in that case not "sufficiently conclusive" to constitute a favorable termination); <u>see also</u> <u>Bradshaw v. State Farm Mut. Auto. Ins. Co.</u>, 758 P.2d 1313, 1321 (Ariz. 1988) (holding that a settlement can be so one-sided as to constitute a termination favorable to a malicious prosecution plaintiff); <u>O'Fallon v. Farmers Ins. Exch.</u>, 859 P.2d 1008, 1012-13 (Mont. 1993) (following <u>Bradshaw</u>).

Here, the Agreement and Stipulation could be construed as sufficiently conclusive of McDonough's position in the underlying proceedings so as to constitute a favorable termination.[2] The agreement concedes that McDonough is Sky's natural father. This concession was the sole issue in McDonough's petition to establish paternity and, because no unusual facts were present, it also would have foreclosed Joseph Keniston's first petition to adopt. Thus, one can construe the agreement to have resulted in

---

[2] The Kenistons did not insert a release clause in the agreement preventing McDonough's current actions, as is the usual practice.

18

a favorable termination of those proceedings.[3]

McDonough argues that his petition to open and set aside the adoption terminated in his favor when the New Hampshire Supreme Court vacated the March 1992 adoption decree on June 7, 1994. According to the complaint, the defendants countered McDonough's petition to open and set aside the adoption by asserting that he had had proper notice of the proceedings. The New Hampshire Supreme Court vacated the adoption based on McDonough's lack of notice. Thus, the Supreme Court's action is sufficient to constitute a favorable termination.

McDonough's malicious prosecution and defense claims based on the other underlying proceedings cannot be said to have resulted in a favorable termination. The Keniston's petition for termination of parental rights and Joseph Keniston's second adoption petition were withdrawn pursuant to the October 1995 agreement. There is no indication, however, that the proceedings were abandoned under circumstances that demonstrated that there was no factual basis for bringing them.

---

[3] The agreement also grants McDonough joint legal custody over Sky. This outcome could constitute a favorable termination of McDonough's petition for custody, if joint legal custody was the only relief he sought in his petition for custody.

19

The defendants also argue that McDonough's complaint does not allege sufficient facts to demonstrate that they prosecuted or defended the underlying proceedings without probable cause. I reject this argument because the complaint alleges that Caroline Douglas and the Kenistons prosecuted and defended the underlying actions based on evidence they knew to be false so that McDonough would abandon his attempts to assert his parental rights. If true, these facts could demonstrate lack of probable cause and malice. In addition, malice can be inferred from lack of probable cause, and its existence is "always exclusively a question for the jury." Perreault v. Lyons, 99 N.H. 169, 171 (1954); Cohn v. Saidel, 71 N.H. 558, 565 (1902).

Therefore, I deny defendants' motions to dismiss as to Counts I and VI (malicious prosecution and defense) to the extent that those counts are based on McDonough's petition to legitimate, McDonough's petition for custody, Joseph Keniston's first petition to adopt, and McDonough's petition to open and set aside the adoption.[4]

---

[4] I reject Caroline Douglas's argument that as an attorney, she is entitled to immunity for her acts undertaken on behalf of the discharge of her duty to her client. See Aranson, 140 N.H. at 359, 365 (affirmatively adopting the tort of malicious defense against an attorney for acts undertaken on behalf of her client); see also Restatement (Second) of Torts § 674 cmt. d (1977)(attorney who acts without probable cause for an improper

20

## B.    **Partner's Liability**

Charles Douglas moves to dismiss Count XI of McDonough's complaint, alleging partner's liability, on the basis that there can be no vicarious liability in malicious prosecution cases.  In Aranson, the New Hampshire Supreme Court considered the question of whether an action for malicious defense against an attorney gave rise to damages against the attorney's law firm.  Although presented with an opportunity to answer the question, the court instead remanded to the Superior Court, instructing it to determine the liability of a malicious attorney's law firm "in light of applicable legal principals," citing N.H. Rev. Stat. Ann. § 304-A (1984) (Uniform Partnership Act) and N.H. Rev. Stat. Ann. § 294-A (1987 & Supp. 1994) (professional corporations). Aranson, 140 N.H. at 368.

For the proposition that one partner's act of malicious prosecution cannot subject other partners to liability, defendants cite 1 Ronald E. Mallen & Jeffrey M. Smith, Legal Malpractice § 6.8, at 415 (4th ed. 1996) ("There is no vicarious liability for malicious prosecution by a partner who did not participate in, or ratify, the tortious conduct.").  Mallen, in

---

purpose is subject to the same liability for the wrongful use of civil proceedings as any other person).

turn, cites one case, <u>Jackson v. Jackson</u>, 201 S.E.2d 722 (N.C. Ct. App. 1974), where the court held that one partner in a law firm was not liable for a malicious prosecution commenced by another partner without "evidence, direct or circumstantial, of at least his knowledge, approval, or consent . . . sufficient to connect him with the prosecution." <u>Jackson</u>, 201 S.E.2d at 408 (quoting <u>Bowen v. W.A. Pollard & Co.</u>, 91 S.E. 711, 713 (N.C. 1917)). Other authority holds that knowledge of a partner's tort is not necessary. <u>Martin v. Yeoham</u>, 419 S.W.2d 937, 951 (Mo. Ct. App. 1967) (interpreting Uniform Partnership Act and holding that "the true test is not the illegality or the malicious and willful character of the wrong, but whether it was done within the scope of the wrongdoing partner's authority").

At this point, I need not resolve this apparent dispute of authority, for McDonough's complaint alleges that Charles Douglas "knew or should have known" of Caroline Douglas's acts and that Caroline Douglas "was acting as the agent, servant and employee" of Douglas & Douglas "on behalf of her partner," Charles Douglas. Therefore, I deny defendants' motion to dismiss Count XI.

## V.

McDonough alleges intentional infliction of emotional

22

distress based on defendants' statements that McDonough was not Sky's natural father, that he abandoned Sky, and that he abused and harassed Carlene Keniston.  According to the complaint, all the alleged statements were made in the course of judicial proceedings.

The New Hampshire Supreme Court has held that defendants making statements in the course of judicial proceedings "are absolutely immune from civil actions, provided they are pertinent to the subject of the proceeding." Pickering v. Frink, 123 N.H. 326, 329 (1983); see also McGranahan, 119 N.H. at 763.  Although Pickering and McGranahan dealt with libel and defamation actions, the language and rationale of the holdings make it clear that the absolute immunity that attaches to statements made in the course of judicial proceedings extends to intentional infliction of emotional distress claims resulting from such statements.  See also, DeLaurentis v. City of New Haven, 597 A.2d 807, 827 (Conn. 1991); Stiles v. Chrysler Motors Corp., 624 N.E.2d 238, 244 (Ohio Ct. App. 1993); K.B. v. N.B., 811 S.W.2d 634, 640-41 (Tex. App. 1991).  There is no dispute that the statements alleged here were pertinent to legal proceedings, for they form the basis of McDonough's malicious prosecution and defense claims.  Therefore,

23

I dismiss McDonough's intentional infliction of emotional distress claims.[5]

## VI.

To state a civil conspiracy claim, McDonough must allege sufficient facts to show (1) two or more persons (2) agreed to a concerted action (3) to accomplish an unlawful object (or a lawful object to be achieved by unlawful means), (4) and that at least one member of the conspiracy committed an overt act (5) causing damages as the proximate result thereof.  Jay Edwards, Inc. v. Baker, 130 N.H. 41, 47 (1987).  Without an underlying tort, there can be no conspiracy.  Town of Hooksett Sch. Dist. v. W. R. Grace & Co., 617 F. Supp. 126, 133 (D.N.H. 1984) (citing Stevens v. Rowe, 59 N.H. 578 (1880)).

In alleging conspiracy, it is insufficient to set forth "mere legal assertions" or "amorphous accusatory statements" unsupported by factual content.  Jay Edwards, 130 N.H. at 47-48.  As in Jay Edwards, McDonough's complaint fails to adequately allege a key element of conspiracy, namely that the defendants

_____

[5] Because I dismiss these claims based on absolute immunity, I need not decide whether the defendants' statements constituted extreme and outrageous conduct.

24

agreed to pursue an unlawful act.  See MacFarlane v. Smith, 947 F. Supp. 572, 580 (D.N.H. 1996) (dismissing conspiracy complaint for failing "to plead any facts tending to show the existence of a tainted agreement, such as a 'backroom' meeting between the co-conspirators"); Thompson v. Aland, 639 F. Supp. 724, 729 (N.D. Tex. 1986) (dismissing conspiracy complaint under Rule 12(b)(6) for failing to contain factual allegations of conspiratorial conduct beyond the blanket accusation of conspiracy).  Therefore, I dismiss Counts V and X of McDonough's complaint.[6]

---

[6] Even if McDonough's complaint sufficiently alleged a civil conspiracy, a substantial unresolved question exists as to whether a client and her attorney-agent can form a conspiracy. See, e.g., Marmott v. Maryland Lumber Co., 807 F.2d 1180, 1184 (4th Cir. 1986) ("[A] conspiracy between a corporation and its agents, acting within the scope of their employment, is a legal impossibility."); Friendship Med. Ctr., Ltd. v. Space Rentals, 62 F.R.D. 106, 112 (N.D. Ill. 1974) ("[A] conspiracy does not exist between a principal and agent."); Fraidin v. Weitzman, 611 A.2d 1046, 1079 (Md. Ct. Spec. App. 1992) ("It is established law that there can be no conspiracy between a principal and an agent where the agent acts within the scope of his or her employment."); 15A C.J.S. Conspiracy § 17 (1967) ("Ordinarily a principal and agent cannot be guilty of a civil conspiracy.").  In addition, even if McDonough succeeded on his conspiracy claim, it would only yield damages equal to his underlying malicious prosecution count, thus making the two claims duplicative. See Cunningham v. Hagedorn, 422 N.Y.S.2d 70, 73 (N.Y. App. Div. 1979) (dismissing conspiracy count as duplicative of malicious prosecution claim).

## VII.

For the forgoing reasons, I grant defendants' motions to dismiss (documents nos. 13 and 23) in part and deny it in part. Counts II, III, IV, V, VII, VIII, IX, and X are dismissed.

SO ORDERED.

_____
Paul Barbadoro
United States District Court

September 12, 1997

cc:  James H. Moir, Esq.
     Marshall L. Grabois, Esq.
     Mark L. Mallory, Esq.
     Cheryl M. Hieber, Esq.