Baldi v. Amadon, et al.              CV-02-313-M    06/09/03
                    UNITED STATES DISTRICT COURT

                     DISTRICT OF NEW HAMPSHIRE


John A. Baldi,
        Plaintiff

        v.                              Civil No. 02-313-M
                                        Opinion No. 2003 DNH 099
Roger W. Amadon, Henry Farrin,
Frank Cassidy, Eric Bourn, James
McKenzie, Paul Pearson, Jon Harwood,
Stacy Manning, Donald Stout,
Barbara Sweet, Wayne Vetter, New
Hampshire Fish & Game Department,
Nicholas Cort, Michael Walls, Philip
T. McLaughlin, John Hickey, Peter
Bosiak, Laurance Yeaton,
and the Town of Epsom,
        Defendants


                       **O R D E R**


     Plaintiff has filed a 214-paragraph, twenty-seven-count

complaint, naming twenty defendants, and asserting fourteen

causes of action under 28 U.S.C. § 1983 and thirteen causes of

action under state law.[1]  By order dated October 30, 2002, the

court granted Wayne Vetter's Motion to Dismiss, and by order

---

     [1] In effect, plaintiff has asserted 212 separate legal
claims, several of which are themselves based on multiple
constitutional provisions and legal theories, which further
complicates a complaint that can hardly be considered a "short
and plain statement" of plaintiff's claims.  FED. R. CIV. P.
8(a)(2).

dated March 12, 2003, the court granted plaintiff's motion to dismiss defendant Robert Berry. Before the court are: (1) a motion to dismiss filed by Jon Harwood and Stacy Manning[2] (document no. 30); (2) the State Defendants' Motion for Judgment on the Pleadings (document no. 42), filed on behalf of the New Hampshire Fish and Game Department, James MacKenzie, Barbara Sweet, Nicholas Cort, Michael Walls, and Philip T. McLaughlin ("the State defendants"); and (3) the State's Motion to Dismiss on behalf of State Substituted for Donald Stout (document no. 55), in which the State on behalf of Stout also joins in the State Defendants' Motion for Judgment on the Pleadings. Plaintiff objects to all three motions. For the reasons given below, both motions to dismiss are granted in full; the State defendants' motion for judgment on the pleadings is granted in part; and several counts of plaintiff's complaint are dismissed sua sponte, for failure to state a claim.

---

[2] Mr. Harwood is called "Jon" in the caption of plaintiff's complaint, "John" in the heading of his own motion to dismiss, and "Jon" in the body of that motion. Similarly, Ms. Manning is called "Stacy" in the caption of the complaint, "Stacy" in the heading of her motion to dismiss, and "Stacey" in the body of that motion. Given the lack of guidance offered by defendants as to their actual names, the court uses the spellings given in the caption of plaintiff's complaint.

## Factual Background

The following facts are drawn from plaintiff's complaint and construed in the light most favorable to him.  See Cooperman v. Individual Inc., 171 F.3d 43, 46 (1st Cir. 1999) (citation omitted) (setting out the standard of review for Rule 12(b)(6) motions); Donovan v. City of Haverhill, 311 F.3d 74, 76 (1st Cir. 2002) (citation omitted) (setting out the standard of review for Rule 12(c) motions).  Left out of the following survey of the facts are those matters discussed in ¶¶ 32-40, which have already been the subject of a suit in this court, Civ. No. 01-396-JD, which was resolved by two orders found at 2002 DNH 095 and 2002 DNH 194.

On July 8, 1999, at approximately 11:00 p.m., plaintiff shot two deer in a field he owns on the south side of Center Hill Road in Epsom.  He did so under a valid agreement with the New Hampshire Fish and Game Department ("Fish & Game"), a copy of which had been sent to the Epsom Police Department ("EPD").

Shortly after plaintiff shot the deer, and while he was standing near the edge of his field, a white four-wheel-drive

3

pick-up truck entered the field and drove toward him at between thirty and forty miles per hour. As plaintiff moved out of the path the truck appeared to be following, it changed its course, and headed directly for him. When the truck was a short distance away, it slid to a stop, striking plaintiff on the palms of his hands, which he had raised in front of him. After the truck slid to a stop, defendant Paul Pearson emerged, engaged in a short conversation with plaintiff, got back into the truck, and drove off. (Plaintiff did not know Pearson at the time, and did not learn his identity until some time later.) As Pearson was driving off, he stopped briefly before leaving the field.

After his confrontation with Pearson, plaintiff loaded one of the deer he had shot into the back of his truck and drove home. Along the way, plaintiff noticed defendant Jon Harwood standing in the driveway of his (Harwood's) residence, videotaping him. When he got home, plaintiff removed the deer from his truck. From his home, plaintiff saw the lights of a vehicle in the field where he had shot the deer. He drove down to see who was in the field.

4

Plaintiff took a rifle with him.  He placed a dummy round in the chamber, intending to play a trick on the person he assumed to be in the field.  As he approached, plaintiff discovered an Epsom police cruiser in the field, and another one parked on the road, near the entrance to the field.  After he parked his truck, plaintiff was approached by Lieutenant Farrin and Officer Cassidy of the EPD.

Before Lt. Farrin and Officer Cassidy went to plaintiff's field, Cassidy met with Pearson, who called plaintiff a bastard. The officers had also met with Harwood, and explained to him that plaintiff was authorized to shoot deer under a depredation permit.  Harwood, in turn, told the officers that he and Stacy Manning had made a videotape, complete with audio, of the events that had just taken place in plaintiff's field.  Harwood and Manning shot some of the videotape from within plaintiff's field, and had entered the field on prior occasions to videotape him, despite having been told to stay off plaintiff's property.  As a part of their conversation with Harwood, Lt. Farrin and Officer Cassidy conspired with Harwood to have him continue covertly

videotaping plaintiff.[3]  Also on July 8, Lt. Farrin and Officer Cassidy set up audio intercepting equipment in plaintiff's field.

When Lt. Farrin and Officer Cassidy approached plaintiff, he asked them to do something about the man who had tried to run him over.  The officers, already aware that Pearson had been the driver of the white pick-up truck, asked plaintiff whether it was legal for him to be shooting deer.  Plaintiff then told the officers about the law that permitted him to do so.  The officers, however, had already checked with Fish & Game and knew that plaintiff had a valid depredation permit that allowed him to shoot deer.

When Officer Cassidy saw the rifle in plaintiff's truck, he asked plaintiff if the rifle was loaded.  Plaintiff said it was not.  Officer Cassidy then asked whether plaintiff minded if he looked at the rifle.  Plaintiff said he did mind.  Officer Cassidy nevertheless picked up the rifle and discovered the dummy

_____

[3] The existence of a conspiracy is, of course, is a legal conclusion.  But in this recitation, the court accepts plaintiff's complaint, which asserts that "[o]n the night of July 8, 1999 defendants Farrin and Cassidy conspired with defendant Harwood for him to continue covertly video taping Mr. Baldi . . . ."  (Compl. ¶ 102.)

6

round in the chamber.  After some discussion about whether the dummy round was in fact a live round, Officer Cassidy returned both the dummy round and the rifle to plaintiff, who then drove home.

The next morning, plaintiff went to the Epsom police station to talk with Chief Amadon, as had been suggested the night before by Lt. Farrin.  At that meeting, on July 9, Chief Amadon expressed his displeasure about plaintiff's having hung a deer carcass from a tree in front of his house on July 6.  Plaintiff had shot a deer on the night of July 5, and Officer Bourn of the EPD saw the carcass in plaintiff's truck shortly after it was shot.  The next morning, at about 8:00 a.m., plaintiff hung the carcass from a tree in his yard, and then went to Fish & Game to report that he had shot a deer, so that it could be tagged by someone from Fish & Game.

Plaintiff explained to Chief Amadon that he had hung the deer where he did because that was the coolest spot on his property convenient for tagging and removal by Fish & Game.  Fish & Game never removed the deer.  Instead, it was removed and

7

buried by the Town of Epsom on July 8, after hanging in the tree for approximately forty-eight hours.

Later in July 1999, plaintiff had a confrontation with Officer Cassidy, in which Cassidy became upset over plaintiff's continued shooting of deer. Plaintiff, in turn, asked the officer whether any progress had been made in finding the person in the white pick-up truck who had tried to run him over on July 8. Officer Cassidy reported that the EPD did not know who had driven into plaintiff's field and directed plaintiff to give the EPD more information about the incident by making a statement at the police station. On August 10, plaintiff gave a statement to the EPD, which included the license number of the pick-up truck.

On July 28, 1999, Chief Amadon executed an affidavit to obtain a warrant to arrest plaintiff for violating N.H. Rev. Stat. Ann. ("RSA") § 147:13, which pertains to offensive matter, including the bodies of dead animals. In his affidavit, Chief Amadon, who knew that the deer had been hung on July 6, falsely stated that: (1) the EPD had started to receive phone calls about the deer on July 4; and (2) between July 4 and July 7, the EPD

8

had received and recorded four calls about the deer and the Bow dispatch service had received and recorded five additional calls about the deer. The falsity of Amadon's statement arises from the fact that the deer in question was not hung in the tree until July 6, making it impossible for callers to have complained about it on July 4 or 5.

On the same day that he executed his affidavit and obtained an arrest warrant, July 28, Chief Amadon arrested plaintiff for violating RSA 147:13 and for hunting from a motor vehicle, in violation of RSA 207:7. On August 22, 1999, Officer Bourn arrested plaintiff for making a false report to law enforcement, based upon the statement plaintiff gave on August 10 about the incident on July 8. The EPD arrested plaintiff for making a false report, despite having in their possession the videotape made by Harwood, which supported plaintiff's version of the events of July 8 and which contradicted police statements and trial testimony offered by Pearson and Harwood. At some point after the incident on July 8, the Epsom selectmen became aware of it and allegedly conspired with the EPD in falsely arresting and maliciously prosecuting plaintiff, in order to protect Pearson,

9

Harwood, Manning, and defendant James McKenzie, a state police officer employed by Fish & Game as a conservation officer.[4]

According to plaintiff, he was arrested (on which occasion, he does not say): (1) because he would not give up his constitutional and statutory rights to protect his property by shooting deer that damaged his crops; and (2) to protect Pearson, because an arrest of Pearson would implicate McKenzie for instigating Pearson's actions on July 8.

Before arresting plaintiff on August 22, Officer Bourn made untruthful and defamatory statements[5] about plaintiff to defendant Donald Stout, a bail commissioner, who, at Bourn's request, included those statements in a note he transmitted to

_____

[4] Again, plaintiff does not set out facts that meet the legal definition of conspiracy, but simply asserts that "[t]he selectmen for the Town of Epsom . . . conspired with the Epsom police department in the false arrest and malicious prosecution of Mr. Baldi in order to protect defendants Pearson, Harwood, Manning and McKenzie." (Compl. ¶ 126.)

[5] Plaintiff's complaint does not identify the allegedly defamatory statement in the note.

10

defendant Barbara Sweet, clerk of the Concord District Court, who included the note in plaintiff's criminal file.[6]

At plaintiff's trial on the offensive matter charge, Chief Amadon testified, on direct examination, that the deer had been hung in the tree on July 4 and that calls had begun to come in on that date.  On cross-examination, Chief Amadon conceded that there had been no observations of the deer in the tree and no phone calls prior to July 6.  Also at plaintiff's trial, McKenzie testified that he had been directed to go to plaintiff's residence in response to plaintiff's report that he had shot the deer, that he had actually gone to plaintiff's residence, along with Officer Cassidy, and that he had seen the deer in the tree.  Neither McKenzie nor Cassidy tagged the deer, removed the deer, informed plaintiff of their visit, or left notice that the deer was offensive matter subject to RSA 147:13.[7]  Plaintiff claims

---

[6] While the complaint makes no mention of it, plaintiff filed a state court action against Stout, alleging defamation, libel-actual malice, and invasion of privacy, based upon the note Stout sent to Sweet.  In that action, the Superior Court granted Stout's motion to dismiss for failure to state a claim, based upon Stout's judicial immunity. Baldi v. Stout, Merrimack Cty. Super. Ct., No. 00-C-0345, Feb. 8, 2001.

[7] In addition to failing to tag the deer on July 6, McKenzie, along with unnamed others, had, on various unspecified

11

that, until it was tagged, Fish & Game regulations prohibited him from disposing of the deer himself.

Plaintiff was found guilty on the offensive matter charge, and was fined. However, he was found not guilty of hunting from a motor vehicle, and the charge of making a false report to law enforcement was dropped after the prosecutor acknowledged to the trial court, at the end of the State's case, that some of his witnesses had testified untruthfully.

Some time after the July 8 incident, plaintiff reported it to defendants Nicholas Cort and Michael Walls, Assistant Attorneys General for the State of New Hampshire. Cort and Walls, in turn, allegedly conspired with defendant Philip McLaughlin, then the Attorney General of New Hampshire, to conceal Pearson's criminal acts of July 8.[8] Moreover, plaintiff accuses Cort, Walls, and McLaughlin of directing the New

_____

occasions, entered plaintiff's property, without permission, and had covertly observed him, with the use of night-vision equipment.

[8] Yet again, plaintiff does not set out facts that meet the legal definition of conspiracy, but simply asserts that "[d]efendants Cort and Walls . . . conspired with defendant McLaughlin to conceal Pearson's criminal acts." (Compl. ¶ 112.)

12

Hampshire State Police to uncover some illegal act he had committed, so he could be prosecuted. Officer Ralston of the New Hampshire State Police was unable to identify any crime committed by plaintiff. Plaintiff further accuses Cort and Walls of deliberately lying, in various fora, about the laws of New Hampshire, the records they possessed, and plaintiff's legal rights, as part of a broad conspiracy to defame him, damage his professional reputation, impede his progress in law school, prevent him from receiving depredation permits and crop-damage payments, and to lay the groundwork for denying him admission to the New Hampshire bar.[9]

Plaintiff further asserts that Fish & Game has granted depredation permits and made crop-damage payments to unnamed others who are similarly situated, and has granted depredation permits to unnamed others who do not even have crops, while denying him such permits and payments.[10]

_____

[9] As with his defamation claims against Stout and Sweet, plaintiff does not identify any specific false statement by Cort or Walls.

[10] While the complaint makes no mention of it, plaintiff has already litigated his right to crop-damage payments and depredation permits in a variety of fora, including the New Hampshire Superior Court (Merrimack Cty. Super. Ct. docket nos.

13

Finally, plaintiff asserts that: (1) Fish & Game, the executive branch, and unnamed members of the New Hampshire House of Representatives and Senate are involved in various unnamed illegal activities being conducted in concert with the Blue Mountain Forest Association ("Blue Mountain"); (2) Attorney General McLaughlin knew of and was involved in those activities; and (3) Attorney General McLaughlin and Fish & Game attempted to discredit him because he uncovered evidence of unspecified racketeering activities involving Blue Mountain, Fish & Game, and unnamed politically powerful individuals.

Based upon the foregoing combination of asserted facts and conclusory allegations, plaintiff filed this suit.

## Discussion

I. Harwood and Manning's Motion to Dismiss

Jon Harwood is named as a defendant in five federal and six state claims. Specifically, plaintiff claims that Harwood is

---

95-E-275, 96-E-0057, 97-E-022, 98-E-063, and 00-E-0057), the New Hampshire Board of Claims (docket nos. 95-021 and 96-016), and the New Hampshire Ad Hoc Wildlife Damage Hearing Board (docket no. 97-001).

14

liable to him, under § 1983, for malicious prosecution of the charge that plaintiff made a false report to law enforcement (Count I), conspiracy to maliciously prosecute him for false reporting (Count II), denial of his Fifth and Fourteenth Amendment property rights (Count VI), conspiracy to deny him his Fifth and Fourteenth Amendment property rights (Count VII), violation of his Fourth Amendment right to be secure in his person and house against unreasonable searches (Count VIII), and conspiracy to violate his Fourth Amendment rights (IX). Under state law, plaintiff asserts that Harwood is liable for violations of RSA 570-A:2 for intercepting and disclosing oral communications (Counts XV and XVI), conspiracy to violate RSA 570-A:2 (Count XVII), invasion of privacy (Count XX), conspiracy to invade his privacy (Count XXI), and abuse of process and authority (Count XXVII). Plaintiff asserts claims against Manning in Counts II, VI, VII, VIII, IX, XV, XVI, XX and XXVII.

Harwood and Manning move to dismiss the § 1983 claims on grounds that plaintiff has not pled adequate facts to establish that they were acting under color of state law and has not adequately pled a deprivation of a federally protected right. In

15

turn, they ask the court to decline supplemental jurisdiction over plaintiff's state claims, due to the lack of a federal claim.

Plaintiff counters that by conspiring to give false statements to the police and by agreeing to videotape him, Harwood and Manning meet the "close-nexus" test for state action with respect to Counts I and II, but in the interest of judicial economy, he declines to address the rest of his federal claims individually.

A motion to dismiss for "failure to state a claim upon which relief can be granted," FED. R. CIV. P. 12(b)(6), requires the court to conduct a limited inquiry, focusing not on "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). When considering a motion to dismiss under FED. R. CIV. P. 12(b)(6), the court must "accept as true all well-pleaded allegations and give plaintiffs the benefit of all reasonable inferences." Cooperman, 171 F.3d at 46 (citing Gross v. Summa Four, Inc., 93 F.3d 987, 991 (1st Cir. 1996)).

16

However, while a court "deciding a motion to dismiss under Rule 12(b)(6) . . . must take all well-pleaded facts as true . . . it need not credit a complaint's 'bald assertions' or legal conclusions." Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1216 (1st Cir. 1996) (quoting Wash. Legal Found. v. Mass. Bar Found., 993 F.2d 962, 971 (1st Cir. 1993)). Finally, "[d]ismissal under Fed.R.Civ.P. 12(b)(6) is only appropriate if the complaint, so viewed, presents no set of facts justifying recovery." Cooperman, 171 F.3d at 46 (citing Dartmouth Review v. Dartmouth Coll., 889 F.2d 13, 16 (1st Cir. 1989)).

As a preliminary matter, Harwood and Manning are entitled to dismissal of Counts II, VII, and IX, the three conspiracy claims, for the reasons discussed in the court's order on defendant Vetter's motion to dismiss. The court granted Vetter's motion to dismiss for the reasons given in that motion, i.e., that plaintiff failed to allege facts sufficient to support claims of conspiracy under Counts II, IV, VII, IX, XI, and XIII. Those claims are no better supported, and are no less conclusory, as to Harwood and Manning than they were regarding Vetter.

Accordingly, the motion to dismiss is granted as to Counts II, VII, and IX.

The remaining federal counts are dismissed for failure to allege facts which, if proven, would establish that Harwood and Manning acted under color of state law.

In order to prevail on a § 1983 claim, a plaintiff must prove that one or more individual defendants, acting under color of state law, deprived him or her of a right, privilege, or immunity secured by the Constitution or laws of the United States. See, e.g., Blessing v. Freestone, 520 U.S. 329, 340 (1997). Action by a non-governmental entity may qualify as being taken under color of state law

> if, with respect to the activity at issue, the private entity is engaged in a traditionally exclusive public function; is "entwined" with the government; is subject to governmental coercion or encouragement; or is willingly engaged in joint action with the government.

Logiodice v. Trs. of Me. Cent. Inst., 296 F.3d 22, 26 (1st Cir. 2002) (citing Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n, 531 U.S. 288, 295-96 (2001)).

For government encouragement to transform private action into state action, "[m]ere approval of or acquiescence in the initiatives of a private party is not sufficient." Blum v. Yaretsky, 457 U.S. 991, 1004-05 (1982) (citing Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 164-65 (1978); Jackson v. Metro. Edison Co., 419 U.S. 345, 357 (1974)). "Rather, the plaintiff must show that the State 'has exercised coercive power or has provided such significant encouragement, either overt or covert,' that the challenged conduct fairly can be attributed to the State." Perkins v. Londonderry Basketball Club, 196 F.3d 13, 19 (1st Cir. 1999) (quoting Blum, 457 U.S. at 1004). As for joint action, the "test requires an evaluation of whether 'the government has so far insinuated itself into a position of interdependence with [the private entity] that it must be recognized as a joint participant in the challenged activity.'" Perkins, 196 F.3d at 21 (quoting Burton v. Wilmington Parking Auth., 365 U.S. 715, 725 (1961)). Indicia of interdependence and joint activity include "the extent to which the private entity is (or is not) independent in the conduct of its day-to-day affairs," Perkins, 196 F.3d at 21 (citations omitted), "the circumstances surrounding a private entity's use of public facilities," id.

19

(citations omitted), and, where relevant, "whether (and if so, to what extent) the [state] knowingly shared in the profits spawned by [the private entity's] discriminatory conduct," id. (citations omitted).

Under that legal standard, plaintiff has not alleged facts sufficient to establish that defendants Harwood and Manning were acting under color of state law to maliciously prosecute plaintiff, to deny him his property rights, or to violate his right to be free from unreasonable searches. The full extent of the alleged link between Harwood and Manning and state officials is as follows: (1) on July 8, Harwood told Lt. Farrin and Officer Cassidy that he had been videotaping plaintiff (Compl. ¶ 64); (2) the officers asked Harwood to continue videotaping plaintiff (Compl. ¶ 63) and/or conspired with Harwood to have him continue his taping (Compl. ¶ 102); and (3) Harwood and Manning told Vetter that they had been videotaping plaintiff, and Vetter did nothing to stop them. In essence, all plaintiff alleges is that on July 8, the EPD officers asked Harwood to keep on doing what he was already doing, and Vetter never told him to stop. Thus, nothing alleged in plaintiff's complaint rises above the level of

mere acquiescence.  See Blum, 457 U.S. at 1004-05.  Moreover, plaintiff's unsupported incantation of the term "conspiracy" is insufficient to support an allegation that Harwood and Manning were acting under color of state law.  See Slotnick v. Staviskey, 560 F.2d 31, 33 (1st Cir. 1977) (citations omitted) ("complaints [brought under § 1983] cannot survive a motion to dismiss if they contain conclusory allegations of conspiracy but do not support their claims with references to material facts").

Because plaintiff has not alleged facts sufficient to establish that Harwood and Manning were acting under color of state law, all of plaintiff's federal claims against them are dismissed.  And because those claims are dismissed, the court declines to exercise supplemental jurisdiction over plaintiff's state-law claims against Harwood and Manning, as this litigation is still in its early stages.  See Camelio v. Am. Fed'n, 137 F.3d 666, 672 (1st Cir. 1998).  Accordingly, Harwood and Manning's motion to dismiss is granted in full.

21

## II. State's Motion to Dismiss on Behalf of State Substituted for Donald Stout

Donald Stout is named as a defendant in five federal claims.[11] Specifically, plaintiff claims that Stout is liable to him, under § 1983, for malicious prosecution of the charge that plaintiff made a false report to law enforcement (Count I), conspiracy to maliciously prosecute him for false reporting (Count II), malicious prosecution of the charge that plaintiff hunted from a motor vehicle (Count III), conspiracy to maliciously prosecute him for hunting from a motor vehicle (Count IV), and violation of his right to be confronted with the witnesses against him (Count XIV). The State, on behalf of Stout, moves to dismiss the § 1983 claims on a variety of grounds including lack of subject matter jurisdiction, Eleventh Amendment sovereign immunity, and the Rooker-Feldman abstention doctrine. The State, on behalf of Stout, also claims entitlement to judgment on the pleadings based on judicial and quasi-judicial immunity, statutory immunity, qualified immunity, the statute of

---

[11] While Stout is also listed as a defendant in Count XXVII, a state claim for abuse of process and authority, plaintiff states, in the memorandum of law supporting his objection to the motion to dismiss, that Stout is a defendant only under five federal claims. The court takes plaintiff at his word, and dismisses Count XXVII as to defendant Stout.

22

limitations, claim preclusion, issue preclusion, and failure to state a claim on which relief can be granted. Plaintiff objects on a variety of grounds.

In the complaint, plaintiff alleges that Stout wrote and sent to the Concord District Court a defamatory note about him, based upon second-hand information from Officer Bourn. The harm, according to plaintiff, is that Stout's note was placed in his criminal file and tainted the proceedings against him. According to plaintiff, by writing and sending the letter, Stout: (1) participated in maliciously prosecuting him on two charges; (2) conspired to maliciously prosecute him on those same two charges; and (3) denied plaintiff his Sixth Amendment right to confrontation.

In an order dated February 8, 2001, New Hampshire Superior Court Judge Kathleen McGuire ruled that Stout was protected by absolute judicial immunity with respect to the note at issue here. See footnote 6, supra. Plaintiff is bound by that ruling in this action as well. See Patterson v. Patterson, 306 F.3d 1156, 1158 (1st Cir. 2002) (citations and internal quotation

23

marks omitted) (explaining that "federal statutory law requires federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so").

Moreover, even if Stout's actions were not protected by absolute judicial immunity, all of plaintiff's federal causes of action, as to Stout, would be dismissed for failure to state a claim. Counts II and IV, which allege conspiracy, are dismissed as to Stout for the same reason they have been dismissed as to Vetter, Harwood, and Manning.

Counts I and III, which are based upon plaintiff's claims of malicious prosecution, allege no facts to support a claim, and do not allege, even in a conclusory manner, that Stout's note played any role in the institution of criminal proceedings, which is essential to a claim of malicious prosecution under New Hampshire law. See State v. Rollins, 129 N.H. 684, 687 (1987) ("This jurisdiction recognizes the tort of malicious prosecution, which may be the subject of an action for damages when a plaintiff has been 'subjected to a criminal prosecution instituted by the

24

defendant without probable cause and with malice, [terminating in the plaintiff's] favor.'" (emphasis added)) (quoting Robinson v. Fimbel Door Co., 113 N.H. 348, 350 (1973)). That Stout's note influenced the trial judge in plaintiff's criminal case – which must be assumed for the purposes of Stout's motion to dismiss – does not prove that the note, or any other action on Stout's part, led to the institution of the criminal proceedings against plaintiff, which is necessary to establish Stout's liability for malicious prosecution. Id. Furthermore, plaintiff's complaint does not specify the contents of Stout's note, other than to call it defamatory – a conclusion of law the court need not credit. See Shaw, 82 F.3d at 1216 (citation omitted). Finally, even if plaintiff had stated a viable claim for malicious prosecution, "[t]he law is settled that a garden-variety claim of malicious prosecution garbed in the regalia of § 1983 must fail [because] [t]here is no substantive due process right under the Fourteenth Amendment to be free from malicious prosecution . . . ." Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 256 (1st Cir. 1996) (citing Albright v. Oliver, 510 U.S. 266, 268-86 (1994) (plurality op.); Calero-Colon v. Betancourt-Lebron, 68 F.3d 1, 3

25

n.7 (1st Cir. 1995)). Accordingly, plaintiff has failed to state a claim against Stout in either Count I or Count III.

As to Count XIV, in which plaintiff claims that Stout violated his Sixth Amendment right of confrontation, several fundamental problems exist. Under the Sixth Amendment, a criminal defendant is guaranteed the right "to be confronted with the witnesses against him." Here, there is simply no allegation that the note from Stout was ever introduced into evidence, or was used against plaintiff, in any criminal trial. Thus, plaintiff has not alleged that Stout was ever a witness against him, which defeats his Sixth Amendment claim. As well, it is entirely unclear how a potential witness, who has no control over the conduct of a criminal case, could ever be liable for a Sixth Amendment violation. Finally, because the purpose of the Sixth Amendment is to guarantee that criminal defendants receive fair trials, a confrontation clause claim is properly raised in an appeal from a criminal conviction, or in a petition for habeas corpus relief, not, as here, in a freestanding § 1983 action. Thus, plaintiff has failed to state an actionable confrontation clause claim against Stout in Count XIV.

26

In summary, the federal claims against Stout are dismissed and, as with Harwood and Manning, the court declines to exercise supplemental jurisdiction over the state claims against Stout. See Camelio, 137 F.3d at 672. Accordingly, the motion to dismiss filed by the State on behalf of Donald Stout is granted.

III. State Defendants' Motion for Judgment on the Pleadings

Six State defendants now remain: Fish & Game, James McKenzie, Barbara Sweet, Nicholas Cort, Michael Walls, and Philip T. McLaughlin. For the same reasons that justify dismissal of the conspiracy claims against Vetter, Harwood, Manning, and Stout, all of the federal conspiracy claims against the remaining State defendants are dismissed. For the same reasons that justify dismissal of Counts I, III, and XIV as to Stout, those same claims are dismissed as to Sweet, and, as with Stout, the court declines to exercise supplemental jurisdiction over the state claims against Sweet.

Furthermore, all federal claims against Fish & Game must be dismissed because "§ 1983 actions do not lie against a State." Arizonans for Official English v. Arizona, 520 U.S. 43, 69 (1997)

27

(citing <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 71 (1989)).  Not only is the State itself legally unavailable as a § 1983 defendant (because it is not a "person"), so too are its agencies.  <u>See</u> <u>Brown v. Newberger</u>, 291 F.3d 89, 92 (1st Cir. 2002) (citing <u>Will</u>, 491 U.S. at 71).  States may not be sued under § 1983 not because of sovereign immunity, but because "§ 1983 creates no remedy against a State."  <u>Arizonans</u>, 520 U.S. at 69.  Because the suit against Fish & Game is a suit against the State, all federal claims against Fish & Game are dismissed.  The court declines to exercise supplemental jurisdiction over the state claims brought against Fish & Game.

Given these rulings, plaintiff's federal case against the State defendants now consists of five counts against McKenzie (Counts I, VI, VII, X, and XII), and three counts against Cort, Walls, and McLaughlin (Counts VI, VIII, and X).  The State moves for judgment on the pleadings as to each of those remaining claims, on a variety of grounds.  Plaintiff objects, also on a variety of grounds.

When deciding whether to grant a motion for judgment on the pleadings, under FED. R. CIV. P. 12(c), the court "accept[s] as true the well-pleaded factual allegations of the complaint, draw[s] all reasonable inferences therefrom in the plaintiff's favor, and determine[s] whether the complaint, so read, sets forth facts sufficient to justify recovery on any cognizable theory." Donovan, 311 F.3d at 76 (quoting TAG/ICIB Servs., Inc. v. Pan Am. Grain Co., 215 F.3d 172, 175 (1st Cir. 2000)).

A.    James McKenzie

Plaintiff claims that McKenzie is liable to him, under § 1983, for maliciously prosecuting the charge that he (plaintiff) made a false report to law enforcement (Count I), denying him his Fifth and Fourteenth Amendment property rights (Count VI), violating his Fourth Amendment right to be secure in his person and house against unreasonable searches (Count VIII), denying him his Fourteenth Amendment right to equal protection (Count X), and assault and battery, in violation of his Fourth Amendment rights (Count XII).  McKenzie is also a defendant in the state claims asserted in Counts XVIII, XIX, XXI, XXII, XXV and XXVII.

29

### 1. Count I

As noted above, ordinary malicious prosecution does not give rise to a claim under § 1983. See Roche, 81 F.3d at 256. But even if it did, plaintiff has alleged no facts which, if proven, would establish that any act by McKenzie led to the institution of the false reporting charge. See Rollins, 129 N.H. at 687. Accordingly, McKenzie is entitled to judgment on the pleadings as to Count I.

### 2. Count VI

In Count VI, plaintiff claims that McKenzie denied him his Fifth and Fourteenth Amendment rights to: (1) exclude others from his property; (2) use his property for all lawful purposes; (3) possess property; and (4) be paid just compensation. More specifically, plaintiff claims that his constitutional right to exclude others is violated by RSA 206:26, which pertains to the powers of conservation officers, and that his constitutional rights were violated by McKenzie's covert entry onto his property, with night-vision equipment and video cameras, for the purpose of spying on him in an attempt to help Fish & Game take his crops without paying just compensation.

30

Plaintiff's only factual allegations concerning McKenzie are that he: (1) covertly entered onto plaintiff's property and spied on him using night-vision equipment and a video camera; and (2) failed to tag or remove the deer hanging from the tree in plaintiff's yard on July 6. Only the former act is at issue here, but that act does not give rise to a Fifth Amendment violation. The Fifth Amendment pertains to the right to a grand jury indictment in criminal proceedings, double jeopardy, self-incrimination, due process, and just compensation for private property taken for public use. Among the various rights listed in the heading to Count VI in plaintiff's complaint, the only one on which he might base a claim is his right to just compensation.

With regard to just compensation, the only constitutional right implicated by Count VI, plaintiff has alleged no facts to support a claim that McKenzie played any role in determining the amount of his compensation for crop damage, nor are sufficient facts pled to establish any causal connection between McKenzie's entry onto plaintiff's property and the determination of crop-damage payments. See Soto v. Flores, 103 F.3d 1056, 1062 (1st Cir. 1997) (citing Maldonado Santiago v. Velazquez Garcia, 821

F.2d 822, 831 (1st Cir. 1987) ("Section 1983 imposes a causation requirement similar to that of ordinary tort law.")). Accordingly, McKenzie is entitled to judgment on the pleadings as to Count VI. Furthermore, the same reasoning that justifies judgment on the pleadings in favor of McKenzie also justifies <u>sua sponte</u> dismissal of Count VI as to all other defendants named in that count.

### 3. <u>Count VIII</u>

In Count VIII, plaintiff claims that McKenzie violated his Fourth Amendment right to be secure in his person and house against unreasonable searches by using night-vision and video equipment to spy on him, under cover of darkness, throughout his property, including his residence and its curtilage. If McKenzie entered plaintiff's curtilage and searched areas of the curtilage or residence in which plaintiff had a reasonable expectation of privacy, then plaintiff suffered a violation of his Fourth Amendment rights. <u>See</u> <u>United States v. Dunning</u>, 312 F.3d 528, 531 (1st Cir. 2002) (explaining that the Fourth Amendment protects those area in which a person has a legitimate and reasonable expectation of privacy) (citing <u>Rawlings v. Kentucky</u>,

32

448 U.S. 98, 104-05 (1980); Rakas v. Illinois, 439 U.S. 128, 143 (1978)).

However, the Fourth Amendment does not protect plaintiff's open fields from either distant observation or actual entry. Oliver v. United States, 466 U.S. 170, 181 (1984) (explaining that one does not have a reasonable expectation of privacy in open fields); United States v. Cruz Pagan, 537 F.2d 554, 558 (1st Cir. 1976) (citing Ouimette v. Howard, 468 F.2d 1363, 1365 (1st Cir. 1972) (explaining that mere trespass is insufficient to establish a Fourth Amendment violation). Nor does the Fourth Amendment protect any part of plaintiff's property, including his residence and curtilage, that may be viewed from a public way, because he has no reasonable expectation of privacy in those areas. See Bilida v. McCleod, 211 F.3d 166, 171-72 (1st Cir. 2000) (citing Minnesota v. Dickerson, 508 U.S. 366, 375 (1993) (explaining that the Fourth Amendment does not protect that which is in plain view from a lawful vantage point)). Accordingly, while plaintiff has stated a claim under Count VIII, that claim is limited to an assertion that McKenzie entered his curtilage or

33

residence, or observed those areas from a vantage point that was not open to the public.

### 4. Count X

In Count X, plaintiff claims that McKenzie denied him equal protection of the law, as required by the Fourteenth Amendment, by: (1) denying him crop-damage payments and depredation permits while granting such payments and permits to others who were similarly situated or who were less worthy of such payments and permits; and (2) concealing and destroying records and lying before boards and courts in order to hide deliberate discrimination against plaintiff. Assuming, without deciding, that the denial of crop-damage payments and depredation permits can constitute an equal protection violation, plaintiff has alleged no facts that implicate McKenzie in any way in the failure to make or issue such payments or permits. Plaintiff's general claims about destruction of records, and perjury, are far too conclusory to support a cause of action. See Shaw, 82 F.3d at 1216. Accordingly, McKenzie is entitled to judgment on the pleadings as to Count X.

5.    Count XII

In Count XII, plaintiff claims that McKenzie violated his Fourth Amendment right to be secure in his person, by causing Pearson's assault and battery on him on July 8.  According to plaintiff, McKenzie initiated Pearson's assault and battery by implying to Pearson that plaintiff was engaged in illegal activities and by failing to "implement consequences for Pearson's previous deleterious and illegal behavior."  Plaintiff has failed to state a constitutional claim on which relief can be granted.

As a preliminary matter, plaintiff has not alleged facts sufficient to establish that defendant Pearson was acting under color of state law.  That failure alone is fatal to Count XII. See Blum, 457 U.S. at 1004-05; Perkins, 196 F.3d at 19, 21.

Even if plaintiff had sufficiently alleged that Pearson was acting under color of state law, he has failed to state a Fourth Amendment claim because he does not assert that he was seized, by Pearson or by anyone else, and has alleged no facts from which a seizure could be inferred.  The Fourth Amendment speaks to "the

35

right of the people to be secure in their persons . . . against unreasonable searches and seizures." However, "the Fourth Amendment is not implicated unless, viewed objectively, [a law enforcement] officer's conduct communicated an intention to use official authority to restrain the individual's freedom of movement." United States v. Hornbecker, 316 F.3d 40, 45 (1st Cir. 2003) (citing United States v. Cardoza, 129 F.3d 6, 14-16 (1st Cir. 1997)); see also Evans v. Avery, 100 F.3d 1033, 1036 (1st Cir. 1996) (citing Brower v. County of Inyo, 489 U.S. 593, 596-97 (1989); Landol-Rivera v. Cruz Cosme, 906 F.2d 791, 796 (1st Cir. 1990)). Because plaintiff has alleged no facts to support a claim that McKenzie, through Pearson, indicated an intention to restrain his freedom of movement, he has alleged no seizure, and because he has alleged no seizure, he has stated no claim under the Fourth Amendment.

Moreover, even if Pearson had been acting under color of state law, and even under the applicable constitutional provision, plaintiff has failed to state a claim. "[O]utside the context of a seizure, appellate courts have noted that a person injured as a result of police misconduct may prosecute a

36

substantive due process claim under section 1983." Evans, 100 F.3d at 1036 (citations omitted). For police misconduct to rise to the level of a constitutional violation under the substantive due process clause, it must "shock the conscience." See id. at 1037-38. Here, the conduct plaintiff asserts to be unconstitutional is not shocking to the conscience. At worst, the described conduct was merely negligent.

Because plaintiff has not adequately alleged action under color of state law, a Fourth Amendment violation, or a substantive due process violation, McKenzie is entitled to judgment on the pleadings as to Count XII. The same reasoning that justifies judgment on the pleadings in favor of McKenzie also justifies sua sponte dismissal of Count XII as to all other defendants named in that count.

B.    Nicholas Cort, Michael Walls, & McLaughlin

Plaintiff claims that Cort, Walls, and McLaughlin are liable to him, under § 1983, for denying him his Fifth and Fourteenth Amendment property rights (Count VI), violating his Fourth Amendment right to be secure in his person and house against

unreasonable searches (Count VIII), and denying him his Fourteenth Amendment right to equal protection (Count X). Those same defendants are also named in the state claims asserted in Counts XVII, XIX, XXII, and XXVII.

Plaintiff's factual allegations concerning Cort, Walls, and McLaughlin are that: (1) all three conspired to conceal Pearson's criminal acts; (2) all three directed the State Police to investigate him; (3) Cort and Walls perjured themselves in various fora, as part of a conspiracy to harm him; (4) McLaughlin knew of and was involved in various criminal activities involving Blue Mountain; and (5) McLaughlin has attempted to discredit him because he has uncovered evidence of a criminal conspiracy involving various politically powerful individuals. As a preliminary matter, the court notes that virtually none of the allegations against Cort, Walls, and McLaughlin can withstand even the limited scrutiny of a Rule 12(c) analysis; the claims against those three defendants are especially conclusory and lacking in factual underpinning. See Shaw, 82 F.3d at 1216.

38

### 1. Count VI

In Count VI, plaintiff makes the same claim against Cort, Walls, and McLaughlin that he makes against McKenzie, namely that they denied him various Fifth Amendment rights. Because the essential facts that support Count VI concern McKenzie's entry onto plaintiff's property, an activity in which neither Cort, Walls, nor McLaughlin are alleged to have taken part, and because there are no other facts alleged that would support a claim that any act by Cort, Walls, or McLaughlin caused plaintiff to be deprived of any Fifth Amendment rights, including his right to just compensation, those three defendants are entitled to judgment on the pleadings as to Count VI.

### 2. Count VIII

In Count VIII, plaintiff claims that Cort, Walls, and McLaughlin violated his Fourth Amendment right to be free from unreasonable searches of his person and house. Because plaintiff has alleged no facts which, if proved, would subject Cort, Walls, and McLaughlin to liability for violating his Fourth Amendment rights – plaintiff does not allege that any of the three ever entered his property or otherwise subjected him to unlawful

39

surveillance – those three defendants are entitled to judgment on the pleadings as to Count VIII.


        3.   <u>Count X</u>

In Count X, plaintiff claims that Cort, Walls, and McLaughlin violated his right to equal protection by denying him crop-damage payments and depredation permits and by attempting to conceal and destroy evidence of the discrimination against him. As with McKenzie, plaintiff has alleged no facts that implicate Cort, Walls, or McLaughlin in any way in the issuance of crop-damage payments or depredation permits. And plaintiff's claims about the destruction of records and perjury are far too conclusory to support a cause of action. <u>See</u> <u>Shaw</u>, 82 F.3d at 1216. Accordingly, Cort, Walls, and McLaughlin are entitled to judgment on the pleadings as to Count X.


        4.   <u>Counts XVII, XIX, XXII, and XXVII</u>

Because Cort, Walls, and McLaughlin are entitled to judgment on the pleadings on all federal claims against them, the court declines to exercise supplemental jurisdiction over the state

claims asserted against them in Counts XVII, XIX, XXII, and XXVII. See Camelio, 137 F.3d at 672.

IV. Claims Dismissed Sua Sponte

In the interest of judicial economy – a concern that is necessarily triggered by the filing of a complaint as unwieldy as this one – the court has examined the entire complaint and has determined that the following counts should be dismissed sua sponte for failure to state a claim on which relief can be granted.

A. Count V

In Count V, plaintiff asserts that Chief Amadon violated several of his constitutional rights by submitting a false affidavit in order to secure a warrant for his arrest on the offensive matter charge. First, as plaintiff concedes that there was a dead deer hanging from a tree in front of his house from July 6 to July 8, as a matter of law there was probable cause on July 28 to arrest plaintiff for a violation of the offensive matter statute, whether telephone complaints were or were not made by citizens on July 4 and 5. More importantly, when

41

examined closely, this count amounts to little more than an appeal of the verdict entered against plaintiff in his trial on the offensive matter charge, and this court can entertain no such appeal.  See Younger v. Harris, 401 U.S. 37, 43-49 (1971).


    B.    Count XIX

In Count XIX, plaintiff asserts that Bourn, Cassidy, Farrin, Amadon, McKenzie, Vetter, Walls, Cort, McLaughlin, Fish & Game, John Hickey, and four current and former Epson Selectmen (John Hickey, Peter Bosiak, Laurance Yeaton, and Robert Berry) are liable to him, in negligence, for inferring to Pearson that plaintiff was engaged in illegal activities, and by failing to inform Pearson that it was lawful for plaintiff to shoot deer. According to plaintiff, the negligence of the defendants named in Count XIX placed him in harm's way by exposing him to Pearson's alleged battery.  While Count XIX purports to be a claim in negligence, plaintiff does not frame it in terms of the elements of that tort and, as a consequence, does not identify with any specificity the duty that the fifteen named defendants allegedly breached.  To the extent that Count XIX is based upon a duty not to convey false inferences, plaintiff has alleged no specific

42

facts to support a claim that such a duty was breached, and to the extent that Count XIX is based upon an affirmative duty to inform Pearson of the lawfulness of plaintiff's activities, New Hampshire law imposes no such duty. Accordingly, Count XIX is dismissed for failure to state a claim on which relief can be granted.

### C.   Count XXII

In Count XXII, plaintiff asserts that Bourn, Cassidy, Farrin, Amadon, McKenzie, Vetter, Walls, Cort, McLaughlin, and Fish & Game are liable to him, in negligence, for failure to uphold and enforce the privacy laws. As with Count XIX, Count XXII is pled far too amorphously to support a cause of action. Moreover, New Hampshire law imposes no tort duty, running to plaintiff, on any of the named defendants to "enforce the privacy laws." Accordingly, Count XXII is dismissed for failure to state a claim on which relief can be granted.

### D.   Count XXIII

In Count XXIII, plaintiff asserts that Amadon is liable to him in negligence for failing to check the various police records

43

documenting that no citizen had called to complain about the deer carcass in plaintiff's yard until July 6, and that Amadon's negligence led to the issuance of an arrest warrant for plaintiff. According to the facts alleged by plaintiff, the arrest warrant in question was issued on July 28, well after the incident that gave rise to the offensive matter charge. Even if there were no phone complaints until July 6, the fact remains that a deer carcass was hanging from a tree in plaintiff's yard for approximately forty-eight hours, from July 6 to July 8, and that fact was certainly known at the time the warrant was issued. On that basis, the lack of phone complaints before July 6 is entirely immaterial to the existence of probable cause and validity of the arrest warrant. With or without complaints on July 4 and 5, there was a deer carcass hanging in a tree on plaintiff's property for two days; that was more than sufficient to establish probable cause to believe that plaintiff had violated the offensive matter statute. Because the deer in the tree, on its own, established probable cause for an arrest warrant, plaintiff cannot, as a matter of law, prove that Amadon's alleged negligence caused any injury to him.

44

Accordingly, Count XXII is dismissed for failure to state a claim on which relief can be granted.


E.    Count XXIV

In Count XXIV, plaintiff asserts that Bourn and Sweet are liable to him for defamation, based upon Bourn's slandering him to Stout, and Sweet's libeling him by placing Stout's letter in plaintiff's criminal file.  As noted above, plaintiff has characterized the content of Stout's note as defamatory, but has nowhere pled the actual content of that note.  Thus, he has failed adequately to establish the elements of defamation, which, under New Hampshire law, consists of a defendant's "fail[ure] to exercise reasonable care in publishing, without a valid privilege, a false and defamatory statement of fact about the plaintiff to a third party."  Independent Mech. Contractors, Inc. v. Gordon T. Burke & Sons, Inc., 138 N.H. 110, 118 (1993) (citing RESTATEMENT (SECOND) OF TORTS § 558 (1977); R. MCNAMARA, 8 NEW HAMPSHIRE PRACTICE, PERSONAL INJURY, TORT AND INSURANCE PRACTICE § 2 (1988)).  Accordingly, Count XXIV is dismissed for failure to state a claim on which relief can be granted.

45

F.    Count XXVI

In Count XXVI, plaintiff asserts that Pearson is liable to him for defamation, for referring to him as a bastard, which caused Officer Cassidy to think that plaintiff was currently, or had been in the past, engaged in unlawful activities.  Under New Hampshire law, a defamatory statement is a false statement of fact, see id., "that tends to lower the plaintiff in the esteem of any substantial and respectable group of people," Nash v. Keene Publ'g Corp. 127 N.H. 214, 219 (1985) (citing Duchesnaye v. Munro Enters., Inc., 125 N.H. 244, 252 (1984)).  Determining whether a statement is capable of defamatory meaning is a question of law for the court.  Duchesnaye, 125 N.H. at 252-53 (citing Thomson v. Cash, 119 N.H. 371, 373 (1979); RESTATEMENT (SECOND) OF TORTS § 614 (1977); W. PROSSER, TORTS § 111, at 747-48 (4th ed. 1971)).

While statements of fact may be defamatory, statements of opinion, as a general rule, are not.  See Nash, 127 N.H. at 219 (citations omitted).  Here, plaintiff has alleged nothing more than a statement of opinion.  Furthermore, while plaintiff claims that Pearson's statement suggested to Cassidy that plaintiff was

46

engaged in some unlawful illegal activity, a statement of opinion is only actionable when "it may reasonably be understood to imply the existence of defamatory fact as the basis for the opinion." Nash, 127 N.H. at 219 (quoting Duchesnaye, 125 N.H. at 249). Simply calling plaintiff a bastard cannot reasonably be understood as implying that he was engaged in illegal activities; there are any number of reasons why one person might call another a bastard, most having more to do with character than action. Accordingly, plaintiff has failed, as a matter of law, to state a defamation claim on which relief can be granted, and, on that basis, Count XXVI is dismissed.

G.   Count XXVII

In Count XXVII, plaintiff asserts that Amadon, Farrin, Cassidy, Bourn, McKenzie, Vetter, Cort, Walls, McLaughlin, Stout, Sweet, Pearson, Harwood, Manning, the Town of Epsom, and Fish & Game are liable to him for abuse of process and authority because they "all abused the legal process and their duty to operate within the law, uphold the law, and to equally and fairly enforce the law when they committed the acts stated [in Counts I-XXVI]." Count XXVII is simply too ill-defined and conclusory to state a

47

claim on which relief can be granted. Accordingly, Count XXVII is dismissed.

## Conclusion

For the reasons given above, Harwood and Manning's motion to dismiss (document no. 30) is granted in full, the motion to dismiss filed on behalf of Stout (document no. 55) is granted in full, and the State defendant's motion for judgment on the pleadings (document no. 42) is granted in full as to all State defendants other than McKenzie. McKenzie, as well, is entitled to judgment on the pleadings except on Counts VIII, XVII, XXI, and XV.

Based upon the foregoing, plaintiff's case now consists of the following claims:

Count I (against Amadon, Farrin, Cassidy, Bourn, and Pearson);

Count III (against Amadon, Farrin, Cassidy, and Bourn);

Count VIII (against Amadon, Farrin, Cassidy, Bourn, and Pearson);

Counts XV & XVI (against Farrin and Cassidy);

48

Count XVII (against McKenzie, Farrin, Cassidy, Bourn, Hickey, Bosiak, and Yeaton);

Count XVIII (against Pearson);

Count XXI (against McKenzie, Farrin, and Cassidy); and

Count XV (against McKenzie).


**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

June 9, 2003

cc:  John A. Baldi
     Donald E. Gardner, Esq.
     Nancy J. Smith, Esq.
     Paul A. Maggiotto, Esq.
     James J. Bianco, Jr., Esq.
     Brian T. Tucker, Esq.

49